# CHARLESTON.

## PLANT v. HUMPHRIES.

Submitted June 10, 1908.    Decided November 2, 1909.

1. JUDGMENT—*Conclusiveness*—*Record Showing Jurisdiction.*
   If the record of a cause shows that the court had jurisdiction, it is conclusively presumed to speak the truth in that particular, and the judgment, unless successfully assailed for fraud or collusion, is binding until reversed upon appeal or such direct rehearing as may be warranted by law. (p. 92).

2. INFANTS—*Actions*—*Judgment*—*Eligibility of Guardian Ad. Litem.*
   In a suit to sell the coal of an infant, the representation of the infant by a guardian *ad litem* who, it is afterwards dis-

closed, was interested in the sale and purchase of the coal, does not render the decree void for want of jurisdiction. (p. 92).

3. SAME—*Sale of Property—Decree—Certainty.*

A decree for the sale of an infant's coal, which sufficiently locates and designates the tract as a whole, but is not specific in defining the location of reservations of small parcels of coal therein, is not void for uncertainty.   (p. 93).

4. SAME—*Actions—Judgment—Vacation After Majority.*

Fraud in the procurement of a decree may be attacked at any time, if there has been diligence in discovering it and promptness in proceeding to attack it, notwithstanding the expiration of a day to show cause against the decree. (p. 94).

5. SAME—*Sale of Property—Interest of Guardian Ad Litem—Effect.*

The interest of a guardian *ad litem* in the purchase of the infant's coal, sold in the proceeding or suit in which the infant was represented by that guardian *ad litem*, will render the sale voidable.   (p. 94).

6. EQUITY—*Laches.*

Where one has means of knowing or ascertaining his rights, where he is put on inquiry, where ordinary prudence should impel him to enquire, he must do so or else time runs against him in the assertion of those rights.   (p. 95).

7. SAME.

One who would repel the imputation of laches by showing ignorance of his rights must be without fault in remaining in ignorance of those rights.   Indolent ignorance and indifference will no more avail to prevent the bar of laches than will voluntary ignorance.   Equity aids only the vigilant.   (p. 96).

8. MINES AND MINERALS—*Owner of Surface Land—Title to Coal Beneath.*

The possession of the surface land does not carry with it possession of the coal under that surface where the estate in the coal has been severed as to title.   (p. 98).

9. SAME.

For the surface owner to aver properly possession of coal severed in title from the land, he must state that he has had actual physical possession of the coal, apart from his possession of the surface, as by operating mines.   (p. 98).

10. LIMITATION OF ACTIONS—*Fraud—Discovery.*

When the statute of limitations is applicable to a cause of action arising out of fraud, it runs from the perpetration of the fraud unless there has been fraudulent concealment of the cause of action.   (p. 98).

11. EQUITY—*Laches—Possession of Land.*

    Laches does not run against one asserting rights to real estate which he has had in possession during the delay in asserting those rights. (p. 99).

Appeal from Circuit Court, Harrison County.

Bill by William G. Plant against Enoch Humphries and others. Decree for defendants, and complainant appeals.

*Affirmed.*

*Edward G. Smith,* for appellant.

*W. Scott* for appellee, B. H. Brown. *Davis & Davis* and *Osman E. Swartz,* for appellees, Chieftain Coal Co. and others.

ROBINSON, JUDGE:

The coal under the land of William G. Plant was sold by his guardian, Dexter G. Fittro, while Plant was yet an infant. This sale of his coal was made under the authority of a decree in a suit which the guardian instituted for the procurement of that authority. Plant was sixteen years of age at the institution of the proceedings leading to a decree to sell. A guardian *ad litem* was appointed for him, in the person of John W. Brown. This guardian *ad litem* answered in the cause on behalf of the infant, responding that it would be to the infant's interest to make sale of the coal and invest the proceeds. Plant also answered in person, to the same effect. Depositions tending to establish the propriety of the sale were taken and read in the cause. The guardian, Fittro, more than two years after the date of the decree authorizing him to sell the coal of his ward, reported to the court that he had made sale to Beeson H. Brown at the price of $19 per acre. Thereupon, the court confirmed the sale and directed a deed to be made by the guardian to the purchaser. This purchaser was the brother and business partner of John W. Brown, who had represented the infant as guardian *ad litem.* A deed was made by Fittro, guardian, in pursuance of the decree of confirmation, the day next ensuing the entry of that decree. Two days previously, however, that is, one day before the confirmation of the sale, Beeson H. Brown, the purchaser, John W. Brown, the guardian *ad litem,* and one Smith, styling themselves partners as Smith, Brown and Com-

pany, included the Plant coal in a conveyance of a large territory of coal in the same vicinity made to Pennsylvania parties. This conveyance was made for a gross sum by the partners we have mentioned and another person. No other conveyance by Beeson H. Brown of the Plant coal to anyone appears. So it seems that at the time of the decree confirming sale to Beeson H. Brown, his brother John W. Brown, the guardian *ad litem,* had an interest in the purchase of the infant's coal. Title to the large territory of coal, in which Plant's coal was included, conveyed to the Pennsylvania parties, has since passed by several intermediate conveyances to the Chieftain Coal Company. This company took title in 1902. Plant reached his majority nearly nine years before that time, married soon after becoming of age, settled on the land overlying the coal which he had owned, and continued to own the land and reside upon it until the date we have stated. Soon after the coal company became interested in the property, the presence of surveyors on the land caused Plant to make an inspection of the public records and thereby to find that John W. Brown, his guardian *ad litem* in the suit which divested him of title to his coal, was interested in the purchase of that coal by Brown's brother. The deed to the Pennsylvania parties by Smith, Brown and Company and another, disclosing this fact, made indeed before confirmation of the sale of Plant's coal, was recorded a few months after its date. For nine years it had been open to the public.

Plant, upon ascertaining in 1902 the interest of his guardian *ad litem* in the purchase of his coal, very soon instituted his suit in equity seeking to annul the decrees of sale and confirmation in relation to the coal sold on his behalf and the deed made by his guardian in pursuance thereof, and praying that his title to the coal be quieted and that he have general relief. He alleged, in substance, that his guardian and the guardian *ad litem* appointed for him colluded in depriving him of his coal property; that John W. Brown and his partners were receiving $30 per acre for the coal when his guardian *ad litem,* the same Brown, permitted the court to confirm a sale to Brown's brother at $19 per acre; that this fact appears by the deed made to the Pennsylvania parties, of which he knew nothing until a time shortly prior to the institution of his suit; that he knew nothing of the sale of his coal by the court proceedings and the deed of

Fittro, his guardian, or of the interest of his guardian *ad litem*. in the sale and purchase until his examination of the records briefly previous to the institution of his suit; and that he had, until that time, been in total ignorance of the fraud and wrongs in the premises. Constructive notice to the purchasers subsequent to the date of Beeson H. Brown's deed from the guardian was alleged. Many documentary exhibits were filed with the bill, embracing the title deeds in question and the record of the suit by which Plant's coal had been sold. Further particulars of allegations in the bill need not now be stated. We may hereinafter refer to some of them if necessary to understanding and decision. The court, upon demurrers, dismissed Plant's original and amended bills, except in so far as a reformation of the deed of the guardian to Beeson H. Brown was justified because of that deed's variance from the decree authorizing its execution. A reformation of that deed to the extent that it departed from the decree was made. From the decree of dismissal, Plant has appealed.

It is submitted that the court did not have jurisdiction of the person of the infant, because of the interest of the guardian *ad litem* who represented him. But there was a guardian *ad litem* appointed. He accepted the trust and filed an answer. The infant appeared in person and answered. The necessary parties were before the court. The decrees may be voidable because of fraud practiced on the rights of the infant by collusion of the guardian and guardian *ad litem* or the interest of the latter in the purchase, but they are not absolutely void for want of the court's jurisdiction in such a case. That very jurisdiction thus acquired may have been the avenue of fraud, for which the decrees may be avoided. Avoidance of the decrees for fraud is quite different from avoidance of them for want of jurisdiction. There was that character of notice to the infant which the law requires in such suits. The court had cognizance of that class of cases of which the suit was one. The fact that the infant's rights may not have been well represented by the guardian *ad litem* does not argue that he had no guardian *ad litem*. The court had power to hear and determine the cause. This power is the test of jurisdiction. *Sperry* v. *Sanders,* 50 W. Va. 70; *Lemmon* v. *Herbert,* 92 Va. 653. There was due process of law. The record shows jurisdiction. "The record is

conclusively presumed to speak the truth, and can be tried only by inspection. This results from the power of the court to pass upon every question which arises in the cause, including the facts necessary to the exercise of its jurisdiction, and as to which therefore, its judgment, unless obtained by fraud or collusion, is binding, until reversed, on every other court." *Wilcher* v. *Robertson,* 78 Va. 602; Black on Judgments, § 273.

It is said that the bill submitted to the court for sale only a seven foot vein of bituminous coal, and that, therefore, the court had not jurisdiction to decree a sale of all the coal underlying the tract, as it did. It suffices, however, to say that the bill plainly warrants a decree for the sale of all the coal. Reasonably, no other interpretation can be given to the complete context of the bill.

It is contended that the judicial sale of the coal is void for uncertainty in description; that an undesignated part of a larger tract was sold. This contention is based, we find, upon the want of specific designation of the reservations of one acre under the house and two other acres. That the reservations are not specifically described does not make it impossible to locate the tract sold. There is reasonably specific description of the outside boundaries of the coal in the papers of the suit by which it was sold. It is not the tract of coal sold that is wanting in designation; but the lack in this particular is only as to the reservations therein. The tract sold is sufficiently designated; the reservations may not be. The contention is not tenable.

Were the decrees not absolute against Plant until, after becoming of age, he was summoned to show cause against them? The point is made that they were merely "unless" decrees until made absolute by summons to show cause against them, and that, therefore, never having been made absolute, Plant, at this late day is not bound by them; that he can indeed still show any cause whatsoever against them. We shall not here review the learning upon the subject of the necessity of giving an infant a day after reaching majority to show cause against a decree, decide in what cases such saving applies, and in that connection interpret and construe the statute which gives an infant the right to show cause against a decree within six months after he becomes of age, in proper cases, whether a day is reserved in the decree or not. Chapter 132, section 7. These considerations do not

arise for our decision.    Indeed it may be that an infant is entitled to no day to show cause against a decree making sale of his lands in a suit .or proceeding by his guardian to change the character and investment of his estate.    *Parker* v. *McCoy,* 10 Grat. 594.    But this question is precluded from answer here.    Even .if, in any case, such day is necessary to be given, after 'the expiration of that day fraud or collusion may be shown to avoid the decree.    A failure to take advantage of such day in cases to which it applies bars only the showing of error, or the presenting of a rehearing.    If, thereafter, the party becomes cognizant of fraud which will avoid the decree, it may be shown by original bill, as in the case before us.    Fraud may be attacked at any time, if there has been diligence in discovering it and promptness in proceeding to attack it.    And herein arises directly the distinction which makes the question of the application to this case of a day to show cause against the decree wholly foreign to proper consideration.    Plant's bill is based on fraud.    On that alone he seeks to avoid the decrees.    It is not based on the showing of error or on the submitting of new matter.    He does mention alleged irregularities in the suit to sell his land, but, as we view it, he does this only by way of presenting the real ground of his complaint— that is, fraud.    The irregularities, if any, are the result of fraud, it is shown.    The gist of Plant's complaint is fraud, nothing else.    Really, the points of want of jurisdiction, which we have hereinbefore considered, grow out of and are interwoven with the fraud relied upon.    And, since fraud may be shown against the standing of decrees, without reference to the giving of a day to show cause, the consideration of the effect of saving a day and of the fact that the decrees have never been made absolute, if they were not originally so, has nothing to do with this case.    Plant, if he excuses his delay in proceeding, may attack the decrees for fraud, as he does.    Since he yet has his day to show cause upon the ground of that which he presents, what has the question of "unless" decrees to do with this case?    He is still entertained for the cause upon which he relies.

The interest of the guardian *ad litem* in the purchase rendered the sale of Plant's coal voidable.    If attacked in time, the titles of subsequent purchasers for value who had notice of this

fact must. fall. If purchasers of that character had no notice, and, therefore, their rights are not affected, still the guardian *ad litem* must account for profits that went into his hands from the infant's estate by the purchase in which he was interested. He must account as a trustee. A guardian *ad litem* is a fiduciary. It is the duty of a guardian *ad litem,* in such case as this one, to see that the infant is protected in the sale of his property. He cannot speculate on the property as to which he is enjoined to protect the infant. Out of caution to the rights of the infant, the law does not allow the guardian *ad litem* to purchase the property sold even at adequate value. *Newcomb* v. *Brooks,* 16 W. Va. 32. The sale is voidable if he has the least interest in the purchase. That interest is inconsistent with his duty in the premises. He cannot buy in the name of another. The same rule applies to him as to any other fiduciary or person holding trust relation. And this Court has specifically held: "When a commissioner, appointed by a decree in a suit in equity to sell land, becomes the purchaser, the purchase is voidable at the election of any party interested in the land sold. And the law is the same where the purchase is made nominally by a third person, who is reported by the commissioner to the court as the purchaser, but who really purchased for the commissioner and conveyed the land to him after the purchase as reported had been confirmed". *Winans* v. *Winans,* 22 W. Va. 679.

The bill presents a case of fraud sufficient to set aside the decrees if the rights of *bona fide* purchasers for value, without notice, have not vested, or, if such rights have vested, to cause an accounting by the guardian *ad litem.* But does the bill sufficiently negative the laches of Plant in not earlier seeking his rights in the premises? If no excuse for the long delay of nine years appears, he cannot now be heard. Equity aids only the vigilant. Does Plant show by the averments of his bill that this maxim does not bar him? He does assert his total ignorance of the fraud until shortly prior to his beginning suit. No means of concealment is averred in the bill, except that which is plainly refuted by the exhibit therewith of. the record of the suit in which the coal was sold. Plant avers that he knew nothing of the sale of his coal at any time prior to 1902, or of the proceedings to sell. But he exhibits the record of those

proceedings, showing that he answered therein, under oath, when sixteen years of age. He disclosed in that answer full knowledge of what was going on at the time. His coming of age, in fact or in law, did not make him dumb as to this fact. Therefore, his bill shows that he did know when he reached his majority that he once had title to the coal underlying his land and that theretofore his guardian had filed a suit to sell same. So, notwithstanding his allegation of total ignorance in the bill, he negatives that statement by making the record of the suit a part of the bill. He avers no deception, or other cause, which could change or divert this knowledge which he must have had upon reaching full age. He clearly shows that he must have known at the age of twenty-one years that his coal had been involved in a suit for its sale. Knowing this, why did he not, when he became his own man, promptly investigate his rights to the coal? A diligent and prudent man then would have reasoned: "I had coal under this land. There was a proceeding by my guardian to sell it while I was yet under age. I know this because I personally made a sworn answer therein. Who got my coal by that proceeding? Who owns it now? What rights to it has he? Where can I find all this? On the county records. I shall inspect them at once". Yet Plant simply says he was ignorant all along, before manhood and after. Does the law excuse such ignorance? It would seem to be not ignorance, but forgetfulness, since he once knew. Does equity excuse such lack of diligence? Then Plant shows that his guardian, Fittro, settled with him and paid to him a large sum of money when he became twenty-one years of age. Did he make inquiry then as to the source of this money? Reason and prudence would demand that he do so. From the averments of the bill, we must assume this money to have included the proceeds of the coal sale. He does not say that his guardian retained or secreted from him those proceeds. Plainly he shows that upon reaching manhood he had full knowledge, or at least should have had, of the fact that his coal had been sold while he was a minor. Why did he not investigate? The law required him to investigate. His failure so to do he does not explain. He would have us believe that it was years afterwards that he first obtained knowledge that his guardian had sold his coal, being then put on inquiry by the presence of surveyors. He says he

went immediately to the records. This was indeed a natural thing to do; but, because it was so natural and sensible a thing to do, the law required him to do it years before, since he had the same knowledge of the coal when he became of age that he had nine years afterwards when the surveyors came on his land. And it must be in good sense assumed that the result of such earlier investigation of the records would have produced the same result that it did in after years; that is, to disclose that his guardian *ad litem* had been interested in the purchase of his coal. The records showed that fact at the earlier period the same as they did at the later. They did not change in this particular. All the time, the deed to the Pennsylvania parties, disclosing John W. Brown's interest in the purchase and sale of the coal, was a part of those public records of the county. Instead of concealing his interest, the guardian *ad litem* had, by recitals in a deed publicly recorded, published it to all. Indeed Plant shows by his bill that for nine years he was wilfully negligent of his rights; that he knew or could have known of them; that he was not aroused to activity to protect his rights until the rights of others had vested by reason of his inactivity and acquiescence. Upon such showing, his bill cannot stand. His excuses for delay are not such as take hold of the conscience of the chancellor and make it inequitable to interpose the bar. He stood idly by and allowed rights of other to vest. He is bound by such evident acquiescence. It must be so in the interest of justice and the progress of human affairs. Where one has means of knowing or ascertaining, where he is put on inquiry, where ordinary prudence should impel him to inquire, he must do so, or else time runs against him. *Lafferty* v. *Lafferty,* 42 W. Va. 783; *Thompson* v. *Iron Company,* 41 W. Va. 574. One who would repel the imputation of laches by showing ignorance of his rights must be without fault in remaining in ignorance of those rights. Indolent ignorance and indifference will no more avail to prevent the bar of laches than will voluntary ignorance. *Redford* v. *Clarke,* 100 Va. 115; *Foster* v. *Railroad Company,* 146 U. S. 99.

It is submitted that laches does not bar Plant because he alleges that he was all along in possession of the coal underlying his land. He does say that he has had possession of the coal. Yet he does not describe the character of that possession.

It would appear that he is simply relying on such possession of the coal as the possession of the overlying surface gave him. The possession of the surface does not carry with it possession of the coal under it, where the estate in the coal has been severed as to title. *Wallace* v. *Elm Grove Coal Co.,* 58 W. Va. 449; *Newman* v. *Newman,* 60 W. Va. 371. His allegation of possession of the coal is not sufficient. He does not show facts distinguishing his possession of the coal from his possession of the overlying surface. This coal as an estate is severed in title from the land. For the surface owner to aver possession of coal severed in title from the land, he must state that he has had actual physical possession of the coal, apart from his possession of the surface, as by operating mines in the coal. True it is, that laches does not run against one asserting title to real estate which he has had in possession during the delay in asserting his rights in the premises. *Mullins* v. *Shrewsbury,* 60 W. Va. 694. But sufficient averment of possession of the coal by Plant, the bill does not contain.

It is, however, insisted that Brown, the guardian *ad litem,* must be charged as a trustee for Plant; that profits came to his hands from his dealings with the coal which he holds only in trust for the party he represented. A case of that character would clearly exist were it not for the lapse of time before suit. Such a trust as is disclosed is not an express one, but arises by implication of law—a constructive trust in fact. This being true, the statute of limitations must apply. That statute bars Plant. It does apply in cases of constructive trusts, but not as to express trusts. Plant's cause of action against Brown for the money is one of concurrent jurisdiction; it is not purely of equitable cognizance, as in the case of an express trust. When the statute of limitations is applicable to a cause of action arising out of fraud, it runs from the perpetration of the fraud. *Thompson* v. *Iron Co.,* 41 W. Va. 574. If, however, there has been fraudulent concealment of the cause of action, it is otherwise. *Newberger* v. *Wells,* 51 W. Va. 624. In other words, the statute begins to run only from the time when the wrong was discovered or ought to have been discovered. 19 Amer. and Eng. Ency. of Law, 242. By the allegations of his bill, Plant fails to take his case out of the statute. He sets forth a cause of action that

by prudence, exercised before the bar of the statute, would readily have been perceived by him.

In view of the foregoing conclusions, the arguments as to notice alleged to have been had by those who became subsequent purchasers of the coal for value are not material. Plant's claim against them for the land, if they had notice by the record as is contended, is stale and unenforceable. He cannot now assert himself to their prejudice. Plant having now no rights against them, and his right to an accounting by the guardian *ad litem* being met by the statute of limitations, the dismissal of his bill, so far as it sought relief in these particulars, was proper.

It is assigned as cross-error that the court should not have reformed the deed to the extent of making it conform to the decree by which it was directed to be made. This reformation related to rights in the land which Plant still owned. By reason of his continued possession of this land, laches in seeking the enforcement of rights as to it cannot be imputed to him. He was entitled to have the deed reformed in so far as it pretended to give rights in his land which the decree did not authorize. His prayer for general relief entitled him to the action of the court in making the deed conform to the decree. His bill, stripped of its insufficiency, made a case of that character. It made none other.

The decree, dismissing the bill except as one to reform the deed, and reforming the deed wherein it was variant from the decree upon which it was based, is affirmed.

*Affirmed.*