UNITED STATES of America, Plaintiff,

v.

Melvyn ALTMAN, Defendant.

No. 92 Cr. 559 (WK).

United States District Court, S.D. New York.

May 11, 1993.

Paul A. Engelmayer, Peter K. Vigeland, Asst. U.S. Attys., New York City, for plaintiff.

Michael S. Ross, Larossa, Mitchell & Ross, New York City, for defendant.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

This criminal action involves the alleged abuse by defendant Melvyn Altman of positions of trust to which he was appointed by

the Surrogates Court of New York County. He is charged, among other things, with having looted an estate of which he was the executor, a conservatorship for a mentally impaired man, and a receivership of an antique company. Additionally, it is alleged that he made false statements in applying for bank loans by omitting to mention the liabilities incurred by improperly taking money for which he had a fiduciary responsibility, or to mention money he otherwise borrowed. These allegations are set forth in the last 22 counts of a 23-count Indictment.

Count I of that Indictment alleges violation of 18 U.S.C. § 1962(c) ("RICO"), asserting that defendant, "a person employed by and associated with the enterprise ... the Surrogates Court of New York County, unlawfully, wilfully, and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise ... through a pattern of racketeering activity." Indictment ¶ 14. The charges are specified in more detail in a Bill of Particulars. Defendant moves to dismiss on the ground that neither the Indictment nor the Bill of Particulars alleged his participation in the "operation or management of the enterprise itself" as required by the recent Supreme Court decision in *Reves, et al. v. Ernst & Young* (1993) —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525. For the reasons that follow, we agree and dismiss Count I of the indictment.

By way of background, we observe that the Supreme Court granted certiorari in *Reves* in order to resolve the conflicting tests the Courts of Appeals were applying to § 1962(c), and that it explicitly rejected an interpretation adopted by the Eleventh Circuit in *Bank of America Nat'l Trust & Savings Assn. v. Touche Ross & Co.* (11th Cir. 1986) 782 F.2d 966. It is therefore appropriate to note the Eleventh Circuit's holding that:

> RICO does not require the degree of participation urged by defendants. It is not necessary that a RICO defendant participate in the management or operation of the enterprise. On its face, the statute requires only that the defendant "participate, directly or indirectly in the conduct of [the] enterprise's affairs...." *Id.* at 970.

In rejecting that standard, the *Reves* Court repeatedly emphasized the importance of finding that a RICO defendant had participated in "operation or management of the enterprise." Thus the following passages (emphasis added):

> The word "conduct" is used twice, and it seems reasonable to give each use a similar construction. As a verb 'conduct' means to *lead, run, manage, or direct....* in the context of the phrase "to conduct ... [an] enterprise's affairs," the word indicates *some degree of direction.* [—— U.S. at ——,] 113 S.Ct. at 1169 (citations omitted).

> We conclude, therefore, that as both a noun and a verb in this subsection, "conduct" requires an *element of direction.* *Id.*

> ... Congress did not intend RICO to extend beyond the acquisition or *operation* of an enterprise. (at ——, 113 S.Ct.] at 1172.)

> [O]ne is not liable under that provision unless one has participated in the *operation or management of the enterprise itself.* *Id.*

> ... Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the *operation or management* of an enterprise through a pattern of racketeering activity." *Id.*

> In sum, we hold that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," § 1962(c), one must participate in the *operation or management of the enterprise itself.* ([at ——, 113 S.Ct.] at 1173)

Towards the end of its opinion, the Court dealt with the Government's *amicus* brief, which argued that the interpretation of § 1962(c) the Court ultimately adopted would make it difficult to prosecute "outsiders" who have no official position within the enterprise. This complaint was echoed in the Dissent, which strongly criticized the Court for limiting RICO liability "to participants in the 'operation or management' of a RICO enterprise" (at ——, 113 S.Ct. at 1174). The Court did not dispute that its reading of subsection (c) had the effect to which the Government and the Dissent objected, but observed that the remedy was not to be found in a misreading of that subsection, but in reliance upon the provisions concerning

"outsiders" in subsections (a) and (b) (at ——, 113 S.Ct. at 1173).

Turning, then, to the Indictment and the Bill of Particulars, the question is whether anything in either document suggests (let alone alleges) that defendant exerted any "control" over the Surrogates Court or played any part in its direction, operation, or management. The answer has to be that neither document makes such a suggestion.

All the Indictment and Bill of Particulars claim defendant to have done with respect to the Surrogates Court is to have betrayed the trust that the Surrogate had imposed upon him by misappropriating funds over which he had fiduciary control; there is no suggestion that he ever "directed" anyone else to do anything.

In this connection we may observe that we need not concern ourselves with the possibility that Count 1 might be saved under the Court's caveat that "[a]n enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." 113 S.Ct. at 1173. Neither the Indictment nor the Bill of Particulars suggests that defendant ever bribed or attempted to bribe the Surrogate. The allegation that he obtained appointments by "cultivating a personal relationship" with the Surrogate (Bill of Particulars at 4) cannot conceivably be construed as suggesting the exercise of control over the court's activities. Count 1 of the indictment must therefore be dismissed.

Before concluding we wish to memorialize the candor and professionalism Assistant United States Attorney Paul Engelmayer displayed in the argument of this motion. Toward the end of the argument it began to occur to us that although Count 1 might be defective, proof of all of defendant's alleged iniquities would be placed before the jury in connection with the other 22 counts; that the conduct of the trial would not be substantially affected by the existence of the RICO count; and that danger of duplicitous appeals should be avoided by allowing the count to stand. When we put this suggestion to the defense it responded with a general assertion that the atmosphere engendered by a RICO racketeering accusation was inherently prejudicial. This left us with the impression that we could remedy the defect by our conduct of the trial. When we turned to the Government for comment, the prosecutor did not fudge the issue with some vague remark such as that he could not quarrel with the defendant's position, but laid out in detail the categories of prejudicial evidence that would be available only if the count were sustained. In these days when one hears so much talk of the Bar's loss of professionalism, it is gratifying to be presented with cogent contrary evidence.

In conclusion, Count 1 of the Indictment must be—and therefore is—dismissed.

SO ORDERED.