Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, as Receiver of George Washington Life Insurance Company, Plaintiff,

v.

Arthur W. MILAM, et al., Defendants.

No. 2:92–0935.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 10, 1994.

410

Joshua I. Barrett, Rudolph L. DiTrapano, Debra L. Hamilton, DiTrapano & Jackson, Charleston, WV, Ellen G. Robinson, C. Philip Curley, Mary Cannon Veed and Cynthia H. Hyndman, Robinson Curley & Clayton, P.C., Chicago, IL, for Hanley C. Clark, Com'r of Ins. for the State of West Virginia, as Receiver of George Washington Life Ins. Co.

John E. Jenkins, Jr., John M. Poma, and Suzanne McGinnis Oxley, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, for Arthur W. Milam.

John H. Wilbur, pro se.

Walter C. Walden, pro se.

Dudley D. Allen, pro se.

Frank E. Clark, Jr., pro se.

Michael J. Davoli, pro se.

Rebecca A. Betts, Robert B. King, King, Betts & Allen, Charleston, WV, Paul J. Bschorr and Alice K. Jump, White & Case, New York City, for Carolyn B. Lamm.

Michael Bonasso, and Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Betty Cordial and John Pendlebury, John Collins, and Cheryl Davis.

John H. Tinney, John J. Nesius, Miller A. Bushong, III, Spilman, Thomas, Battle & Klostermeyer, Charleston, WV, and David Alden, Cleveland, OH, for Tom Fennell and Ernst & Young.

John Andrew Smith, Kay, Casto, Chaney, Love & Wise, Charleston, WV, for Lamar Walker and Walker & Associates.

Michael Bonasso, Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, WV, and Therese Koelle Desai, Michael R. Glover and Joyce N. Van Cott, Glover & Van Cott, Phoenix, AZ, for CTF & Associates, Inc.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is the motion to dismiss filed by the two Defendants who were added to this action by way of the Plaintiffs' amended complaint. This Court has previously addressed motions to dismiss filed by other named defendants. *Clark v. Milam (Clark II )*[1] 830 F.Supp. 316 (S.D.W.Va.1993). This action was brought by the Plaintiff, Hanley C. Clark, Commissioner of Insurance for the State of West Virginia, the appointed Receiver of the George Washington Life Insurance Company ("GW LIFE"). The Commissioner, as Receiver, contends that Defendants, Donald F. Withers and Byron N. Thompson, were aiders and abettors to a wide-ranging conspiracy to loot the assets of GW LIFE, that they breached their professional services contract with GW LIFE, and that they committed professional malpractice in their dealings with GW LIFE.

The Defendants raise four significant issues in support of their motion to dismiss: (1) that this Court lacks personal jurisdiction over them; (2) that the Plaintiff's claims against the Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, fail to state claims upon which relief may be granted; (3) that the applicable statutes of limitation bar Plaintiff's state law claims; and (4) the Plaintiff's state law claims fail to state claims upon which relief may be granted.

### I.

### PERSONAL JURISDICTION

In *Clark II* this Court addressed other defendants' motions to dismiss similarly based on allegations of lack of personal jurisdiction. The standard used to evaluate con-

---

1. This Court has previously addressed issues in this action in three published opinions: (1) *Clark v. Milam (Clark I )*, 813 F.Supp. 431 (S.D.W.Va. 1993); (2) *Clark v. Milam (Clark II )*, 830 F.Supp. 316 (S.D.W.Va.1993); and (3) *Clark v. Milam (Clark III )*, 152 F.R.D. 66 (S.D.W.Va.1993).

tested personal jurisdiction was stated as follows:

"When a court's personal jurisdiction is contested by a Rule 12(b)(2) motion, the jurisdictional question raised is one for the court, and the plaintiff bears the burden of ultimately proving by a preponderance of the evidence the existence of a ground for jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). But where ... the court addresses the challenge only on the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint, the burden on the plaintiff is to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge. *Id., Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 175 (D.S.C.1993); *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 588 (E.D.Va.1992).

The burden plaintiff bears to establish the court's jurisdiction normally is not a heavy one, particularly where the court chooses to rule on the issue without an evidentiary hearing. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (1990). Mere allegations of personal jurisdiction are sufficient for a party to make a *prima facie* showing. *Dowless v. Warren–Rupp Houd-*

*ailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir. 1986). When considering a challenge to its personal jurisdiction on the parties' filings, the court must resolve factual conflicts in favor of the party asserting jurisdiction for the purpose of determining whether he or she has made the requisite *prima facie* showing. *Bakker,* 886 F.2d at 676; *Eastern Marketing Corp. v. Texas Meridian Prod. Co., Inc.,* 798 F.Supp. 363, 364 (S.D.W.Va.1992) (Haden, C.J.)." 830 F.Supp. at 318–19.

West Virginia's long-arm statute, W.Va. Code § 56–3–33 (1984), confers, *inter alia,* jurisdiction over non-residents who are: "... (1) Transacting any business in this State; (2) Contracting to supply services or things in this State[.]" Thus, if the Plaintiff has alleged facts showing that the Defendants transacted any business or contracted to supply services in West Virginia, this Court may exercise personal jurisdiction over them.[2] In this regard, the West Virginia Supreme Court of Appeals has stated that there, "must be a sufficient connection or minimum contacts between the defendant and the forum state so that it will be fair and just to require a defense to be mounted in the forum state."[3] *Pries v. Watt,* 186 W.Va. 49, 52, 410 S.E.2d 285, 288 (1991).[4]

---

**2.** The West Virginia Supreme Court of Appeals has suggested that even a single contract between an out of state company and a resident of West Virginia is enough to invoke long-arm jurisdiction. *Marion v. Sabra Tours International,* 190 W.Va. 250, ——, 438 S.E.2d 42, 46 (1993) ("[I]t is well established, but not entirely without cavil, that where an out-of-state travel agency contracts for even one tour with an in-state agent, the out-of-state travel agency is 'doing business' in the state where the travellers live and is amenable to service of process in that state.")

In *First American First, Inc. v. National Association of Bank Women,* 802 F.2d 1511, 1516 (4th Cir.1986) our Court of Appeals stated:

"[W]here authorized by state law, a single contact by a nonresident defendant may, if sufficiently 'purposeful' in its aim at, and sufficiently egregious in its impact upon, a forum state's legitimate interests, support a constitutional exercise of specific jurisdiction in respect of a claim arising from that very contact. *See Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1172 (5th Cir.1985) (citing principal cases)."

*See Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993) (minimum contacts exist if defendant has purposefully directed its activities toward the forum); *Alpha Welding and Fabricating v. Todd Heller, Inc.,* 837 F.Supp. 172, 174 (S.D.W.Va.1993).

**3.** The Court further opined:

"To what extent the defendant has minimum contacts [with the forum state] depends upon the facts of the individual case. One essential inquiry is whether the defendant has purposefully acted to obtain benefits or privileges in the forum state. In determining whether the exercise of personal jurisdiction is reasonable, a court should consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. Finally, consideration should be given to the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive social policies." 186 W.Va. 49, 52, 410 S.E.2d 285, 288.

**4.** In note 3 of *Clark II, supra,* this Court stated:

"West Virginia's long-arm statute is coextensive with due process. *Pittsburgh Terminal*

The Defendants assert that this Court's previous holding in *Clark II, supra,* is dispositive of the jurisdictional issue in their favor. They argue that, like other defendants previously dismissed from this litigation, they do not have sufficient minimum contacts with West Virginia for this Court to exercise personal jurisdiction over them. However, although previous holdings as to other defendants are instructive, "[t]o what extent the defendant has minimum contacts depends upon the facts of the individual case." *Pries,* 186 W.Va. at 52, 410 S.E.2d at 288.

The Supreme Court of the United States stated in *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985):

"[W]here the defendant 'deliberately' . . . has created 'continuing obligations' between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* [339 U.S. 643, at 648, 70 S.Ct. 927, at 929, 94 L.Ed. 1154 (1950)], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and pro-

*Corp. v. Mid Allegheny Corp.,* 831 F.2d 522, 525 (4th Cir.1987); *Harman v. Pauley,* 522 F.Supp. 1130 (S.D.W.Va.1981). . . . the statute permits the exercise of jurisdiction to outer constitutional limits [and] [t]he state law and due process analyses are therefore identical[.]" 830 F.Supp. at 319.
*See generally, Restatement (Second) Conflict of Laws* § 37 (1971).

5. From a joint stipulation entered into by the Defendants and the Plaintiff, it is undisputed that the two Defendants performed audits of "George Washington Corporation *and subsidiaries,*" (emphasis added) at various times from 1976 through 1990. The Defendants have also admitted that they were aware that their audit and opinions of GW CORP, GW LIFE's parent company, were provided to the West Virginia Insurance Commission. Moreover, from the joint stipulation, it is undisputed that Coopers & Lybrand

"audited the separate statutory financial statements of GW Life for the year ending December 31, 1989, and issued an audit report on the statutory financial statements for that year. [Defendant] Withers served as the engagement partner and [Defendant] Thompson the concurring partner on the audit of the 1989 GW Life statutory financial statements."

From the foregoing it is clear that the Defendants performed work for GW LIFE (as one of GW Corp's subsidiaries, for which GW LIFE was allegedly billed separately) and that the Defen-

tections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."

The Defendants are both partners in the auditing firm of Coopers & Lybrand. In his amended complaint, the Plaintiff alleges that both Defendants supervised and performed annual audits of GW LIFE's financial statements, and that Defendants knew or should have known that the audit reports generated for GW LIFE would be provided to, among others, the West Virginia Insurance Commission.[5] In his response to the Defendants' motion to dismiss, the Plaintiff further contends the Defendants' firm, Coopers & Lybrand, received $725,224.53 from GW LIFE between 1976 and 1990.[6] In 1989, in connection with services provided by the Defendants' firm to GW LIFE, the firm was designated by GW LIFE as its independent certified public accountant and so listed with the West Virginia Insurance Commissioner pursuant to the requirements of W.Va.Code § 33–33–5(b).[7]

dants knew that such work would be reviewed and relied upon by the West Virginia Insurance Commission.

6. It is unclear from the pleadings how much of the sum paid by GW LIFE to Coopers & Lybrand was a result of the Defendants' work. However, as partners in Coopers & Lybrand, it is clear that they shared in the fruits of the firm's labors for GW LIFE.

7. Exhibit # 16 attached to the Plaintiff's response to the Defendants' motion to dismiss contains a copy of a letter sent by the Defendants' firm to GW LIFE. The letter states, in pertinent part:

"You have designated Coopers & Lybrand to act as independent certified public accountants of the George Washington Life Insurance Company for the year ended December 31, 1989. In that connection, we advise you as follows:
1. We are aware of the provisions of the West Virginia Insurance Code and Rules of the Commissioner of the Department of Insurance that relate to accounting and financial matters.
2. We will express our opinion on the financial statements in terms of their conformity to the statutory accounting practices prescribed or otherwise permitted by the commissioner specifying such exceptions, if any, as we believe appropriate.
This letter is furnished solely to enable you to comply with Article 33–33–5(b) of the West Virginia Insurance Code and should not be used for any other purpose."

The Defendants argue that their contacts with West Virginia are similar to those of other defendants who have been dismissed from this action. They point out that they have never physically been in West Virginia. However, physical presence in the forum state is unnecessary for the exercise of personal jurisdiction if "a commercial actor's efforts are 'purposefully directed' toward residents of another State[.]" *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

The allegations made by the Plaintiff against these Defendants are distinguishable from the allegations made against defendants previously dismissed on jurisdictional grounds. Unlike the allegations made against the defendants who were previously dismissed, the Plaintiff alleges that these Defendants committed professional negligence when they generated audits for GW LIFE and failed to perform their obligation to report financial irregularities.[8] The Plaintiff contends that the Defendants realized their audit reports would be utilized by West Virginia Insurance regulators in the regulators' determination of the solvency of GW LIFE. Plaintiff claims that the Defendants failed to report financial irregularities because they were concealing the looting of GW LIFE by its officers and directors.

■ For the purposes of this motion to dismiss, the Court must construe all the facts in a light most favorable to the party asserting personal jurisdiction and "draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Clark II,* 830 F.Supp. at 319. It is clear to this Court that where allegations are made that defendants have rendered accounting services to a West Virginia resident for a period of fifteen years, have been paid for those services by the West Virginia resident, and that they know that the work they perform for the West Virginia resident will be utilized by the resident in proceedings before the West Virginia Insurance Commission, those allegations are sufficient to establish a *prima facie* case of minimum contacts with the State sufficient to establish personal jurisdiction.[9] *See also Wallace v. Frank,* 662 F.Supp. 876, 878 (E.D.Mich.1987) (Pennsylvania accounting firm that sent allegedly fraudulent information to Michigan limited partners as part of scam with partnership and general partner was subject to personal jurisdiction in Michigan despite fact that all work was performed in Pennsylvania: contacts between the parties were "quantitatively minor, [but] qualitatively substantial."); *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1259–61 (S.D.N.Y.1984) (Relying on § 37 of the *Restatement (Second) Conflict of Laws* (1971), federal district court exercised personal jurisdiction over Australian accounting firm that prepared allegedly fraudulent audit file for Australian company trading in the United States; the accounting firm had no office in the United States and did all the work in Australia, although it knew its audits would be utilized by American regulators).

■ The Court must now address whether applying its personal jurisdiction over these defendants comports with the Due Process Clause of the United States Constitution. In this regard, the *Burger King* Court stated:

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." 471 U.S. at

---

8. In *Clark II,* this Court dismissed Defendants Mahoney, Adams & Criser, P.A. because, *inter*

W.Va.Code § 33–33–5(b) (1989) requires an insurance company to furnish a letter from its accountant stipulating that the accountant is aware of West Virginia insurance law and that the accountant will express opinions in conformity with such law. It should be noted that the foregoing statutory requirement enacted in 1989.

*alia,* there was no allegation that the firm included false information in the reports it generated for GW LIFE. 830 F.Supp. at 324.

9. Bolstering the Plaintiff's case for jurisdiction is the fact that the Defendants' firm, Coopers & Lybrand, of which the Defendants are partners, have several clients in and continue to solicit new business in West Virginia.

477, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 544. (emphasis added).

The Defendants herein have presented no compelling case that jurisdiction is unreasonable, and this Court finds quite the opposite: "... West Virginia has a significant interest in providing a convenient forum for this type of litigation." *Clark II*, 830 F.Supp. at 323. Thus, this Court concludes that it has personal jurisdiction over the Defendants.

## II.

### FAILURE TO STATE CLAIM

#### A.

#### RICO "PARTICIPATION"

■ The Defendants assert that the Plaintiff's allegations made pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), fail to state claims upon which relief can be granted. Specifically, they contend that the recent decision of the Supreme Court of the United States in *Reves v. Ernst & Young*, 507 U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) precludes any RICO claim based on a theory that a defendant aided and abetted a RICO violation by another. The *Reves* Court addressed the application of 18 U.S.C. § 1962(c), which states, in pertinent part:

"[it is unlawful] for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity...." (emphasis added).

At first glance, the Defendants' argument seems compelling in light of *Reves'* interpretation of the phrase "to conduct or participate" as imposing a requirement that "one must participate in the operation or management of the enterprise itself[10]" 507 U.S. at ——, 113 S.Ct. at 1173, 122 L.Ed.2d at 540, before liability under § 1962(c) may be imposed. The Court discussed whether the word "participate" was synonymous with "aid and abet," and found such a construction wanting: " 'aid and abet' 'comprehends all assistance rendered by words, acts, encouragement, support, or presence.' Black's Law Dictionary 68 (6th ed. 1990). But within the context of § 1962(c), 'participate' appears to have a narrower meaning." 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 536.

However, although the Supreme Court concluded that "participation" is not synonymous with aiding and abetting, it also *rejected* the proposition that the defendant's management or operation of the RICO enterprise must be *significant*. Footnote 4, 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 537. The *Reves* Court stated:

"the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The 'operation or management' test expresses this requirement in a formulation that is easy to apply." (emphasis in original). 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 537.

As the Plaintiff points out, *Reves* did not directly address whether aiding and abetting a RICO violation by another can constitute liability under § 1962(c), but rather addressed the definition of the word "participate" as used in the statute.[11]

The Defendants suggest that two post-*Reves* cases support their contention that no

---

**10.** The Court went on to state that, "it is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." 507 U.S. at ——, 113 S.Ct. at 1172, 122 L.Ed.2d at 539.

**11.** It should be noted that prior to *Reves*, most courts addressing whether RICO liability may be imposed through aiding and abetting found that such liability exists. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3rd Cir. 1987); *Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475 (5th Cir.1986); *First Federal Savings & Loan Assn. v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427 (S.D.N.Y. 1986). *See generally*, 31A Am.Jur.2d, *Extortion, Blackmail and Threats* § 137 at 675 (1989).

liability may be imposed under § 1962(c) for aiding and abetting a primary RICO violation. In *University of Md. v. Peat, Marwick, Main & Company,* 996 F.2d 1534, 1539 (3rd Cir.1993), the Court of Appeals for the Third Circuit concluded that allegations an accounting firm "perform[ed] financial services and attend[ed] board meetings do not show that [the accounting firm] was participating in the affairs of the enterprise." That Court interpreted *Reves* as follows:

> "There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus. In other words, the person must *knowingly* engage in 'directing the enterprise's affairs' through a pattern of racketeering activity." (emphasis added). 996 F.2d at 1539, *citing Reves, supra,* 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 537.

The *Peat, Marwick* decision, however, is distinguishable from the case at bar because the allegations of participation therein did not contain any suggestion the defendants participated *knowingly* in the enterprise.[12] In the instant case the allegations of participation suggest that the Defendants did more than merely·perform deficient work; it is alleged that they *knowingly* performed such work to protect other defendants by concealing those defendants' RICO violations from state insurance regulators.

The Defendants also cite *Amalgamated Bank of N.Y. v. Marsh,* 823 F.Supp. 209, 220 (S.D.N.Y.1993), where it is stated: "inasmuch as [the plaintiff's aiding and abetting allegation does not] 'indicate some degree of direction' as is now required by the Supreme Court, the Court finds that [the defendant] did not conduct or participate in the operation or management of the bank's affairs[,]"

*citing, Reves,* 507 U.S. at ——, 113 S.Ct. at 1169, 122 L.Ed.2d at 536. *See also, United States v. Altman,* 820 F.Supp. 794 (S.D.N.Y. 1993).[13] Thus, *Amalgamated Bank* focused on the quality of the defendant's participation, not on the mere fact that "aiding and abetting" was alleged.

Plaintiff, on the other hand, relies on *Fidelity Federal Savings and Loan Association v. Felicetti,* 830 F.Supp. 257, 261 (E.D.Pa.1993), where the district court specifically concluded that *Reves* is *not* dispositive in a determination of whether one may be charged with aiding and abetting the RICO violation of another. The *Felicetti* court concluded that *Reves* "is limited to the [Supreme] Court's attempt to define the word 'participate' as it is used in the RICO statute and is not dispositive of [whether aider and abettor liability is inconsistent with § 1962(c) liability]." 830 F.Supp. at 261. The Court therefore concluded it was bound by Third Circuit precedent to deny the defendants motion to dismiss. 830 F.Supp. at 261, *citing, Petro–Tech, Inc. v. Western Co. of N. America,* 824 F.2d 1349 (3rd Cir. 1987).[14]

◼ Here, the parties have not cited nor has the Court found any Fourth Circuit caselaw addressing whether a claim of aiding and abetting a RICO violation is actionable. *Reves, supra,* and the cases from other jurisdictions cited herein suggest, however, that an evaluation of the quantity and type of participation in the enterprise is necessary. The cases uniformly acknowledge that where a defendant is the unwitting tool of a primary RICO violator, even if the defendant's conduct is deficient, such conduct can not rise to the level of "participation" under § 1962(c). Moreover, it appears to be the rule that an allegation of aiding and abetting, without any

---

12. The Court of Appeals stated:

   "[T]he plaintiffs' amended complaint, when distilled to its essence, is nothing more than an allegation that Peat Marwick performed materially deficient financial services. It cannot be said that by merely performing what are generic financial and related services to an insurance company, even if they are later found to be deficient, an accounting firm has opened itself to liability under the federal racketeering statute." 996 F.2d at 1539–40.

13. *Cf., Jones v. Meridian Towers Apartments, Inc.,* 816 F.Supp. 762, 772 (D.D.C.1993) (writing only one or two letters by defendants does not raise to level of 'participation' in RICO enterprise under *Reves* ).

14. *Cf., Adler v. Berg Harmon Associates,* 816 F.Supp. 919, 929 (S.D.N.Y.1993) (RICO complaint adequate where 'high ranking agent' of defendant originated and supervised fraudulent scheme).

suggestion of control over the enterprise, is not enough to bring § 1962(c) liability into play.

The cases are clear, on the other hand, that a defendant need not be the primary agent of control over the enterprise to "participate" in it. Where a defendant's conduct has the effect of controlling some portion of the RICO enterprise, that defendant's participation in the enterprise may rise to the level of conduct within the scope of § 1962(c). Therefore, the use of the term "aiding and abetting" is not helpful because it is the quantity and quality of the defendant's participation in the RICO enterprise that must be evaluated. Such an evaluation can be made only on a case by case basis.

Taking the Plaintiff's allegations as true, it appears that these defendants have exercised an amount and type of control over a RICO enterprise sufficient to sustain a claim based upon § 1962(c). The Plaintiff has alleged that these defendants knowingly concealed the activity of other defendants who exercised day-to-day control over the enterprise. The concealment of the other defendants' conduct is alleged to have been integral to the continuing operation of the RICO enterprise.[15] Although these Defendants' conduct may not have been as active as the conduct they were concealing, and although they may not have received the same benefits as other defendants[16], their control need not have been *significant* to impose liability under § 1962(c). *Reves*, note 4, 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 525. This conclusion comports with the recent decision of the Sixth Circuit in *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 380 (6th Cir.1993). Although that Court did not ad-

dress whether aiding and abetting may be pled, it found that defendant's conduct of "receiv[ing] numerous warnings concerning [primary RICO defendant's] fraudulent sales tactics, [and] continu[ing] to allow, if not actively encourag[ing], [the primary RICO defendants' continuation of] their scheme[,]" combined with the central role of the defendant's product played in the enterprise, gave the Court "little difficulty in ruling that [the defendant] exercised sufficient control over the affairs of the RICO enterprise to withstand scrutiny under *Reves*." 6 F.3d at 380.

This Court thus concludes that the Plaintiff's claim alleges that the Defendants exercised sufficient control over the conduct of the RICO enterprise to withstand a motion to dismiss based on a failure to state a claim upon which relief may be granted.

### B.

### RICO CONSPIRACY

The Plaintiff also alleges in his complaint the Defendants violated 18 U.S.C. § 1962(d). That provision of the RICO statute makes it unlawful for one to enter into a conspiracy to commit the substantive offenses outlined in § 1962.[17] The Plaintiff alleges these Defendants conspired with others to violate § 1962(c).

In their motion to dismiss, the Defendants contend that the Plaintiff has not pled sufficiently § 1962(d) conspiracy because the complaint does not allege any agreement by the Defendants to violate § 1962(c).[18] Although the Plaintiff acknowledges that he has not alleged the specific facts surrounding the agreement to violate § 1962(c), he con-

---

**15.** For example, the Plaintiff alleges that, had the Defendants not concealed the conduct of the primary Rico violators, the West Virginia Insurance Commissioner would have discovered the RICO activity much earlier, and thereby would have prevented some of the looting of GW LIFE. Plaintiff's First Amended Complaint at Paragraph 124.

**16.** As the United States Supreme Court has recently held in *National Organization for Women, Inc. v. Scheidler*, —— U.S. ——, ——, 114 S.Ct. 798, 806, 127 L.Ed.2d 99, 111 (1994): "... RICO contains no economic motive requirement."

**17.** 18 U.S.C. § 1962(d) (1988) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

**18.** The Defendants' motion to dismiss states that the Plaintiff has failed to "allege that [Coopers & Lybrand] agreed to the commission of any of the specified predicate acts (much less agreed to personally commit any of the predicate acts) or that [Coopers & Lybrand] knew the specified acts were part of racketeering activity." Defendants' Motion to Dismiss at 13.

tends that the allegations are sufficient to allow a jury to *infer* that the Defendants agreed and conspired with others to violate § 1962(c).

■ Both parties rely on the leading Fourth Circuit case, *United States v. Pryba*, 900 F.2d 748 (4th Cir.), *cert. denied*, 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990). In *Pryba* the Court rejected the notion that a higher degree of involvement was necessary to violate § 1962(d) than other conspiracies.[19] The Court approved of a jury instruction that stated a RICO conspiracy may be proved where it is shown "that each defendant agreed that another coconspirator would commit two or more acts of racketeering[,]" and thus held, "RICO conspiracy does not require that each coconspirator *personally agree* to commit two or more acts of racketeering[.]" (emphasis added). 900 F.2d at 760. Consistent with *Pryba*, the Plaintiff's complaint must be held sufficient if it alleges that the Defendants "agreed that another coconspirator would commit two or more acts of racketeering[.]" 900 F.2d at 760.

As noted above, the Plaintiff contends the complaint need not allege actual agreement between the coconspirators if it alleges facts from which the conspiracy can be inferred. In *United States v. Norris*, 749 F.2d 1116, 1121 (4th Cir.1984) *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 496 (1985), our Court of Appeals stated: "The existence of a conspiracy need not be proved by direct evidence, but may be inferred from the facts and circumstances of the case." Moreover, the Court held that, "knowledge and participation may also be proved by circumstantial evidence. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)." 749 F.2d at 1121.

This Court concludes the allegations concerning the Defendants' violation of § 1962(d) are sufficient to withstand a motion to dismiss for failure to state a claim upon which relief may be granted. Plaintiff has alleged that the Defendants knowingly concealed the violations of § 1962(c) by the officers and directors of GW LIFE. He alleges that the Defendants performed such concealment in disregard of their duties to make known to regulatory officials and others the financial transactions of the officers and directors of GW LIFE that constituted violations of § 1962(c). From the foregoing allegations one may reasonably infer that the Defendants participated in a conspiracy with the officers and directors of GW LIFE to violate § 1962(c), thereby violating § 1962(d).

## C.

### RICO and RULE 9(b)

■ The Defendants contend also the Plaintiff's two RICO claims fail to state fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) states, in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As part of his RICO conspiracy claim, the Plaintiff has alleged "multiple instances of mail fraud," but has not specified the time, place or date during which the mail fraud occurred.

This Court addressed a similar situation in *Estate of Dearing v. Dearing*, 646 F.Supp. 903 (S.D.W.Va.1986):

"The requirement of [Rule 9(b) ] applies to fraud allegations in civil RICO claims.... While Rule 9(b) may not require allegations as to date, place or time, *see Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3rd Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), the Plaintiffs should employ a 'means of injecting precision and some measure of sub-

---

**19.** The Court cited as support *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir.), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986), and that Court's statement that:

"Nothing on the face of the statute or its legislative history supports the imposition of more stringent level of personal involvement in a conspiracy to violate RICO as opposed to a conspiracy to violate anything else. In fact, it seems more likely that Congress, in search of means to prosecute the leaders of organized crime, intended section 1962(d) to be broad enough to encompass those persons who, while intimately involved in the conspiracy, neither agreed to personally commit nor actually participated in the commission of the predicate crimes."

stantiation into their allegations of fraud.' Id. Moreover, Plaintiffs must allege more than that the Defendants used the mails or a telephone in connection with a fraudulent scheme.... 'The parties must at the minimum supply a general allegation of at least the nature of the mailings or wire communications so that the Court can determine that a cause of action has been pleaded.' *Ray v. Karris,* 780 F.2d 636, 644 (7th Cir.1985). Of course, a court also must liberally construe a complaint in accordance with the spirit of the notice-pleading procedure of the Federal Rules of Civil Procedure and of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." (citations omitted). 646 F.Supp. at 913–14.[20]

"Liberally construing" the complaint, one may easily conclude that the mail fraud alleged, although not stated particularly in regard to date, time or place, includes all alleged instances where the Defendants issued reports or audits that concealed the RICO violations by the officers and directors of GW LIFE. The complaint outlines numerous specific acts of fraud perpetrated by the officers and directors of GW LIFE that these Defendants allegedly knowingly concealed from insurance regulators, despite an obligation to report such wrongdoing, when they issued audits or opinions as part of their professional services for GW LIFE. The Plaintiff has met the minimum requirement of making a "general allegation of ... the nature of the mailings ... so that [this] Court can determine that a cause of action has been pleaded." *Ray v. Karris,* 780 F.2d at 644.

Based upon the foregoing, this Court denies the Defendants' motion to dismiss in regard to the Plaintiffs' RICO claims.

20. *See also Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir.1989) ("Plaintiff's conclusory allegations fail[ed] to satisfy [Rule 9(b)'s] requirement that averments of fraud be stated with particularity[;]" the allegations failed to show who was victimized by the fraud or that the fraud was continuous so as to meet the "pattern of racketeering" requirement of the RICO statute).

## III.

## STATE LAW CLAIMS

### A.

### FAILURE TO STATE CLAIMS

#### 1.

#### AIDING AND ABETTING A TORT

■ The Defendants contend that the Plaintiff has pled claims that have not been recognized by West Virginia's courts—specifically aiding and abetting (1) breach of a fiduciary duty; and (2) aiding and abetting a constructive fraud. This contention is ill-founded. West Virginia clearly recognizes aiding and abetting tortious conduct. In Syllabus Point 5 of *Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991), the Court stated:

"5. For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." [21]

*Accord* Syllabus Point 2, *Barath v. Performance Trucking Co.,* 188 W.Va. 367, 424 S.E.2d 602 (1992). *See Price v. Halstead,* 177 W.Va. 592, 597, 355 S.E.2d 380, 386 (1987).

The Court in *Courtney* went on to adopt the six factors set forth in *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1163 (3d Cir. 1986), *cert. denied, Turgiss v. Fassett,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987) to be used when determining whether a person is liable for assisting or encouraging a tort:

" 'a. the nature of the act encouraged;

" 'b. the amount of assistance given by the defendant;

21. Although Syllabus Point 5 of *Courtney* does not utilize the term "aid and abet," it is clear that the Plaintiff's allegations are actionable under the standard of "substantial assistance or encouragement" enunciated therein.

" 'c.  the defendant's presence or absence at the time of the tort;

" 'd.  the defendant's relation to the other tortfeasor;

" 'e.  the defendant's state of mind;  and

" 'f.  the foreseeability of the harm that occurred.' "  186 W.Va. at 605, 413 S.E.2d at 426.[22]

■  This Court thus concludes that the Plaintiff's state law claims of aiding and abetting the tortious conduct of others do not fail to state claims upon which relief may be granted.[23]  The Defendants motion to dismiss is denied as to those claims.

### 2.
### PROFESSIONAL MALPRACTICE AND BREACH OF CONTRACT

■  Defendants base their assertion that the Plaintiff's claim alleging professional malpractice fails to state an actionable claim upon the assertion the complaint does not allege any relationship between the Defendants and GW LIFE from which any professional duty could arise.  Similarly, the Defendant also asserts the Plaintiff's claim for breach of contract does not sufficiently allege privity between GW LIFE and the Defendants.[24]  As noted above, however, the Plaintiff clearly alleges that for fifteen years the Defendants performed and were paid for accounting services for GW LIFE.  *See* note 5, *supra.*  On that basis, the Plaintiff's claims clearly withstand the Defendants' motion to dismiss.

■  However, the Defendants also contend that the Plaintiff's breach of contract claim fails because it is identical to the tortious professional malpractice claim, and that the case of *Hall v. Nichols,* 184 W.Va. 466, 400 S.E.2d 901 (1990) mandates that only the tort action should lie.  The Plaintiff asserts

that *Hall* actually supports the notion that both causes of action are actionable.

*Hall* involved a legal malpractice claim by a client against a lawyer who failed to search a title adequately.  The Court held,

> "Where the act complained of in a legal malpractice action is a breach of specific terms of the contract without reference to the legal duties imposed by law on the attorney/client relationship, the action is contractual in nature.  Where the essential claim of the action is a breach of duty imposed by law on the attorney/client relationship and not of the contract itself, the action lies in tort."  Syllabus Point 2, *Hall, supra.*

The Court further stated:

> "*Only* when the breach pertains specifically to the 'terms of the contract *without any reference to the legal duties imposed by law upon the [attorney/client] relationship* ...' is the cause of action contractual in nature....  To illustrate, if an attorney fails to perform an act which is covered by the contract of employment such as when he is employed to initiate suit and does not file within the statutory period, the breach at issue is one grounded in contract.  Yet, when the breach of duty at issue is failure to *properly perform* a title search, the 'essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client and ... [therefore], the action is in tort.' "  (emphasis added and citation omitted).  *Hall,* 184 W.Va. at 469, 400 S.E.2d at 904, *citing, Pancake House, Inc. v. Redmond,* 239 Kan. 83, 86, 716 P.2d 575, 578 (1986).

Although the *Hall* Court only addressed legal malpractice, the principles espoused therein logically extend to the accountant/client relationship as well.  The Plaintiff

---

**22.**  These factors are derived from Comment d. to Section 876(b) of the *Restatement (Second) of Torts* (1979).  The West Virginia Supreme Court qualifiedly adopted the six factors by concluding, "that they are not necessarily exhaustive."  186 W.Va. at 605, 413 S.E.2d at 426.

**23.**  The Defendants alternatively argue that if the claims are cognizable, their assistance to the officers and directors, as alleged by the Plaintiff, was not substantial.  For the reasons stated in

Part II, this Court concludes that the allegations are sufficiently substantial to withstand the instant motion to dismiss.

**24.**  Paragraph 145 of the Plaintiff's First Amended Complaint states: "COOPERS [ & Lybrand] contracted with GW LIFE each year from 1976 through 1989 to perform public accounting and auditing services in accordance with generally accepted accounting standards."

alleges Defendants breached a contract made to supply GW LIFE with "public accounting and auditing services in accordance with generally accepted accounting standards." In essence, the contract claims of the Plaintiff can be viewed only as incorporating the Defendants legal duties and obligations. Such a creative contractual claim is precisely the type of claim rejected by the West Virginia Supreme Court in *Hall.* Accordingly, this Court grants the Defendants' motion to dismiss the Plaintiff's breach of contract claim.

## B.

### STATUTE OF LIMITATIONS

■ The Defendants contend that the Plaintiff's state law claims are barred by the applicable statute of limitations. They assert that a two-year statute of limitations applies to all of Plaintiff's claims pursuant to W.Va. Code § 55–2–12 (1959), that states, in pertinent part: "Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property[.]" With the dismissal of the breach of contract claim, it follows that a two-year statute of limitations applies to the balance of Plaintiff's state law claims because all are claims for damage to property for which no limitation is otherwise prescribed.

The Defendants assert that the statutes of limitation were tolled in 1990 for all of the state law claims. Plaintiff, on the other hand, argues that under no circumstances could the statutes of limitation begin to run before June 3, 1991, the day the Plaintiff was appointed Receiver of GW LIFE by the Circuit Court of Kanawha County. Plaintiff alleges that GW LIFE was adversely con-

trolled by its officers and directors prior to that date.[25] Moreover, it must be noted that the parties entered into an agreement suspending the statute of limitations on August 20, 1992.[26] Thus, if the Plaintiff's assertion that the limitation period was tolled prior to his appointment as Receiver is correct, it is clear that limitation periods have not lapsed for the state law claims.[27]

Relevant to a determination of the limitation issue is the recent discussion of the "doctrine of adverse domination" in *F.D.I.C. v. Cocke,* 7 F.3d 396 (4th Cir.1993). There, the Court applied Virginia law to a limitations dispute between the plaintiff, the receiver for a failed savings & loan, and the defendants, officers and directors and attorney for the savings & loan. The plaintiff asserted that, because the bank had been subject to the adverse domination of its officers and directors, the limitations period should be tolled for the time prior to the commencement of the receivership. The Court described the doctrine of adverse domination as follows:

"Under the doctrine of adverse domination, a statute of limitations is tolled on an action against director/officer misconduct so long as a majority of the board is controlled by the alleged wrongdoers. The doctrine rests on the theory that if the wrongdoers 'controlled the corporation through a majority of stock ownership and control of the directorate[,] there [would] consequently [be] no one to sue them.' *White v. FDIC,* 122 F.2d 770, 775 (4th Cir.1941), *cert. denied,* 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942)." 7 F.3d at 402.[28]

The facts of the instant case also resemble those in *Hunt v. American Bank & Trust*

---

**25.** The procedure and circumstances under which the insurance commissioner becomes the receiver of an insolvent insurer is detailed at W.Va.Code § 33–10–1, *et seq.*

**26.** The Defendants have not explained why they would have entered into a tolling agreement if they believed the statute of limitations period had already expired.

**27.** The parties dispute whether the tolling agreement lapsed for a six week period after it became effective. If the limitation period only began to

run on June 3, 1991, as the Plaintiff asserts, the lapsing of the agreement need not be addressed; time could not have expired even if the agreement had lapsed.

**28.** The Court did not apply the doctrine of adverse domination in *Cocke.* It concluded that Virginia had not adopted the doctrine but had instead utilized an equitable estoppel application in similar cases. *See also Resolution Trust Corp. v. Everhart,* 837 F.Supp. 155, 158 (E.D.Va.1993).

*Company,* 606 F.Supp. 1348 (N.D.Ala.1985), *aff'd,* 783 F.2d 1011 (11th Cir.1986). In *Hunt* the Alabama state insurance commissioner sought and was granted the appointment of a receiver for an insurance company. The receiver thereafter brought common law and RICO claims against a bank and others claiming the defendants had committed securities fraud which drained the resources of the insurance company, forcing it into receivership. The Court accepted the contention that the insurance company had been under the complete adverse domination of its officers and directors, and addressed statute of limitations applicability to the receiver's right to pursue actions on behalf of the company:

"[T]he running of the statute of limitations would not begin until knowledge concerning the alleged fraudulent transactions was available to persons or entities other than [the insurance company] or its officers and directors who had the right to pursue avenues of redress, on behalf of [the insurance company], for the alleged fraudulent transactions. Where a corporation ... fails to pursue a claim which is owned by it, shareholders of the corporation are permitted to bring a derivative action to redress the injury to the corporation. Of course, a receiver appointed to represent a corporation has the right to pursue such claims; but more importantly, a receiver often has a duty imposed by a court and by a statute to pursue such claims. Thus, the statute of limitations may begin to run when it is clear that shareholders of the corporation, with an interest in redressing the wrongs against their corporation, are or should be aware of the fraudulent activities damaging the corporation. If such knowledge or notice of facts is never garnered by share-

holders, then the statute may begin to run when a court appointed receiver knows of the fraudulent transaction or acquires notice of facts which the exercise of due diligence would lead to actual knowledge thereof." 606 F.Supp. at 1354.[29]

The Court concluded that,

"A receiver stands in the shoes of the corporation and can only assert those claims that the corporation could assert. Thus, were the court not assuming that [the insurance company] was under the domination and control of defrauding officers and directors, the Receiver would be barred by the applicable statute of limitations. But, because of that domination and control, the running of the statute is tolled, but only *during the period of domination and control.* That domination and control of [the insurance company] ended when the Receiver was appointed[.]" (citations omitted) (emphasis in original) 606 F.Supp. at 1356.

*See Meyers v. Moody,* 693 F.2d 1196 (5th Cir.1982), *cert. denied,* 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983); *Durish v. Uselton,* 763 F.Supp. 192 (N.D.Tex.1990).

Although West Virginia has not had occasion to examine the applicability of the doctrine of adverse domination, the adoption of such a doctrine would comport with the state's discovery rule applied in fraud cases and outlined in Syllabus Point 2 of *Cecil v. Airco, Inc.,* 187 W.Va. 190, 416 S.E.2d 728 (1992):

"2. 'Where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable due diligence should know, of

---

29. The *Hunt* Court noted that the insurance company was a wholly owned subsidiary of a parent corporation, and thus the knowledge of the parent corporation's shareholders of the fraud against the insurance company could be imputed to the receiver. Because the parent company's shareholders had filed shareholder derivative suits based on the fraud alleged by the Receiver, the Court concluded the limitations period began to run when the shareholder suits were filed. Thus the Receiver's separate and much later claims were barred. 606 F.Supp. at 1354–56.

It should be noted that the *Hunt* decision in this regard comports with our Court of Appeals decision in *Cocke, supra.* In *Cocke* the Court held that plaintiff therein would have to show the following to toll the Virginia limitation period under that state's equitable estoppel principles: (1) all the directors of the corporation were implicated in the wrongdoing; (2) the Receiver was unable to sue until its appointment; (3) the directors of the corporation concealed their wrongdoing from the parties from whom the Receiver derived its interest, including the corporations' shareholders; (4) that the concealment lasted until the Receiver was appointed. 7 F.3d at 402–403.

the nature of his injury, and determining that point in time is a question of fact to be answered by the jury.' Syl. pt. 3, *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561 (1990)."

*See also, Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967); *Baker v. Hendrix*, 126 W.Va. 37, 27 S.E.2d 275 (1943); *Plant v. Humphries*, 66 W.Va. 88, 66 S.E. 94 (1909). By extension, a Receiver of a corporation who is appointed after a period of adverse domination of that corporation should not be held to a strict application of the statute of limitations by a defendant whose fraud contributed to the period of adverse domination. Such a policy would allow the defendant to hide behind his fraud—precisely the state of affairs the discovery rule is designed to prevent.[30]

In this case the Defendants allegedly concealed the fraud of the officers and directors of GW LIFE in abrogation of their duties to disclose such activities. That concealment of fraud contributed to the adverse domination of GW LIFE. Estopping these Defendants from utilizing the statute of limitations until that adverse domination was ended would thus comport with the object of the discovery rule adopted by the West Virginia courts.

It seems clear on the basis of West Virginia law and cases that West Virginia courts would toll the statutes of limitation until the Plaintiff's appointment as Receiver on a basis substantially similar to application of the doctrine of adverse domination. Thus, the statute of limitations was tolled against these Defendants until the Plaintiff's appointment as Receiver on June 3, 1991. Because the parties entered into an agreement tolling the statutes of limitation for at least enough time thereafter to prevent the lapsing of these claims, the Court concludes that Plaintiff's state law claims have not lapsed.

Based upon the foregoing, the Defendants' motion to dismiss the Plaintiff's state law claims based upon the expiration of the limitation periods is denied.[31]

IV.

CONCLUSION

The Defendants' motion to dismiss is **GRANTED** as to the Plaintiff's claim for breach of contract. The Defendants' motion to dismiss is **DENIED** as to all other claims.

---

**30.** Adoption of the adverse domination doctrine in West Virginia would also comport with banking receivership actions from other jurisdictions where the adverse domination of the bank was held to toll the applicable limitation period until the appointment of the receiver. *See e.g., Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505 (D.Kan.1992); *F.D.I.C. v. Nathan*, 804 F.Supp. 888 (S.D.Tex.1992); *Resolution Trust Corp. v. Gardner*, 798 F.Supp. 790 (D.D.C.1992); *Banco De Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F.Supp. 1302 (S.D.N.Y.1989); *Federal Deposit Ins. Corp. v. Buttram*, 590 F.Supp. 251 (N.D.Ala. 1984). In such cases, the receiver is not treated as a normal successor in interest. For example, as stated in *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 751–52 (9th Cir.1992), *cert. granted*, — U.S. —, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993):

"A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes. It was neither a party to the original inequitable conduct nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable defects.

\* \* \* \* \* \*

"Also significant is the fact that the receiver become's the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct."

**31.** Also filed in regard to this motion to dismiss was the "Memorandum of Carolyn B. Lamm on One of the Statute of Limitation Issues Raised in the Motion to Dismiss of Withers and Thompson." The Plaintiff then filed a motion to strike that Memorandum as untimely filed. The Plaintiff also filed a Surreply to the Memorandum. Because the Court has independently examined the issues raised and caselaw cited in both the Memorandum and Surreply, the motion to strike is hereby DENIED and the motion for leave to file the surreply is hereby GRANTED.