**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Robert E. HECHT, et al., Defendants.**

Civ. A. No. MJG–92–371.

United States District Court,
D. Maryland.

Feb. 3, 1993.

Robert P. Trout, Leslie Lickstein, Christopher A. Myers, Gina Schaar Howard, Dunnells, Duvall, Bennett & Porter, P.H., Washington, DC, for plaintiff.

Alison D. Kohler, Phillips P. O'Shaughnessy, John E. Sandbower, III, Sandbower, Gabler & O'Shaughnessy, Baltimore, MD, for defendant Robert E. Hecht, Sr.

Robert E. Hecht, Sr. pro se.

Pearl Brackett, pro se.

Richard E. Dunne, III, John B. Howard, Jr., George Beall, Hogan and Hartson, Baltimore, MD, William J. Bowman, Hogan and Hartson, Washington, DC, for defendants Thomas F. Mullan, Jr. and Gerald J. Stautberg.

Melvin J. Sykes, Baltimore, MD, for defendant Melvin Pugatch.

Robert E. Cahill, Sr., Nolan, Plumhoff and Williams, Stephen M. Schenning, Towson, MD, for defendant Thomas J. Reynolds.

John H. Doud, III, Fedder and Garten, Baltimore, MD, for defendant Ward R. Woods.

### MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Defendants Woods' and Ireton's Motion to Dismiss the Complaint or for Summary Judgment on the Ground that all Claims are Barred by Limitations, the Motion of Defendants Mullan and Stautberg for Reconsideration of Ruling on the Statute of Limitations, and Defendant Robert E. Hecht Sr.'s Motion to Dismiss the Complaint or for Summary Judgment on the

Ground that all Claims are Barred by Limitations. The pending motions constitute a request to reconsider and change the prior decision of the Court in light of a recent decision of the United States Court of Appeals for the Fourth Circuit and other grounds. The Court has had the benefit of legal memoranda submitted by the parties and an oral hearing.

## I. BACKGROUND

The factual background of this controversy has been chronicled elsewhere.[1] Briefly stated, the Resolution Trust Corporation ("RTC")—in its corporate capacity as assignee of the rights of Baltimore Federal Financial ("the Bank")—sued a number of former officers and directors of the Bank alleging gross negligence,[2] breach of fiduciary duty, and breach of contract with regard to the officers' and directors' loan decisions.

In a Memorandum and Order dated July 27, 1992, Judge Ramsey (to whom the case was then assigned) issued a ruling that, among other things, addressed the Defendants' Motion to Dismiss on Statute of Limitations grounds. Judge Ramsey noted that where the plaintiff is a federal entity with assigned rights, determining whether the claim is barred by the statute of limitations is a two-step process. First, the court must determine whether the claim was viable on the date the RTC became the conservator of the bank. This determination is made with reference to the applicable state statute of limitations. Second, the court must determine whether—assuming the claim was viable at the time the RTC took over the institution—the RTC brought suit within the time specified in 12 U.S.C. § 1821(d)(14).[3] Judge Ramsey found, and all the parties agree, that the RTC sued in time on any claim viable at the time the RTC became the conservator of the bank, i.e. on February 7, 1989.

The parties do not dispute that this Court must apply the Maryland statute of limitations. Moreover, there is no doubt that the pertinent statute of limitations provides a three year period of limitations. Md.Cts. & Jud.Proc.Code Ann. § 5–101. The parties dispute how this Court should apply the three year statute of limitations. The Court concludes, as did Judge Ramsey, that the statute of limitations should be applied by the federal court in the same manner as would a Maryland state court.

The Maryland precedents do not directly answer the questions presented here. That is, it is not now established whether Maryland recognizes the "adverse domination" doctrine and, if so, in which of its possible forms.

When writing the First Decision, Judge Ramsey had the option of predicting how the Maryland Court of Appeals would rule and/or certifying the questions presented to the Maryland Court of Appeals. Judge Ramsey chose to predict the decision of the Maryland Court of Appeals and not to certify the question. He predicted that Maryland would adopt the adverse domination doctrine in a very[4] pro-plaintiff form. That is, that limitations for suits by, or on behalf of, a corporation against members of its board of directors could not start running so long as directors who were involved in the wrongdoing comprised a majority of the board.

The Defendants wish this Court to reconsider, and change, the conclusion reached in the First Decision.

## II. INTRODUCTORY REMARKS

The Court recognizes that the Defendants, however they express their intent, are seeking to have this Judge change the decision of another Judge of this Court in the same case. The justification offered for this request is the decision of the United States Court of Appeals for the Fourth Circuit in *Shofer v.*

---

**1.** Resolution Trust Corp. v. Hecht, 818 F.Supp. 894 (D.Md.1992) (hereinafter "First Decision" at 2–3).

**2.** The RTC's claims based on simple negligence were dismissed by Judge Ramsey. First Decision at 16.

**3.** This section provides a minimum time period to bring claims—three years for tort and six years for contract claims. If the relevant state statute of limitations provides for a longer period, the state statute controls.

**4.** If not the most.

*Hack,* 970 F.2d 1316 (4th Cir.1992). While the *Shofer* decision deals with the Maryland statute of limitations, it does not directly address the issues presented herein.

The Court further notes that, as made clear at the argument, even the most zealous advocate for the Defendants does not seriously expect this Court to grant dismissal of the Complaint. For, even on the view of limitations most favorable to the Defendants (*i.e.* that limitations start to run on the day that tortious action was taken) dismissal of all claims against any Defendant would be inappropriate. Even if limitations had expired for the making of the loans at issue[5], there would remain valid claims for actions or inactions within the limitations period.[6]

Therefore, viewing the situation realistically, what the Defendants really seek is for this Judge to select a different option than Judge Ramsey did. This Judge is extremely reluctant to do so. However, the argument on the pending motions has persuaded the Court that—albeit reluctantly—it should reconsider and must change the conclusions reached in the First Decision.

As detailed below, this Judge concludes that it will be best for all parties for the Court to certify the adverse domination question to the Maryland Court of Appeals. A definitive answer will benefit all concerned. Moreover, for the guidance of the parties until a definitive decision is reached—and in the event the Maryland Court of Appeals does not accept certification—this Court should make its own prediction of Maryland law. As noted below, this Judge must re-spectfully disagree with Judges Young and Ramsey in making a prediction of the course that the Maryland Court of Appeals will take in regard to the adverse domination doctrine.

## III. *DISCUSSION*

The Maryland Court of Appeals has not squarely faced the issue of whether "adverse domination" of a Board of Directors defers the running of the statute of limitations with respect to claims against members of the Board. The implications and significances of the adverse domination doctrine go far beyond the "white hat"[7] case presented here. It would not be sound to assume that the Maryland Court of Appeals would (or should) adopt a "liberal" rule for the benefit of "white hat" Plaintiffs and a "conservative" rule for Plaintiffs whose interests are more selfishlessly motivated. Moreover, there is nothing to indicate a Congressional policy that would justify the federal courts' applying a special rule "trumping" state precedent for the benefit of the RTC.[8] Hence, the Court must conclude that whatever version of the adverse domination doctrine is adopted for this case would be applicable to causes of action brought by all plaintiffs. For example, the doctrine would be applied to shareholder derivative suits,[9] and to cases brought against directors after a change in corporate ownership, etc. Hence, the Maryland Court of Appeals decision on the adverse domination (in whatever form it is adopted) will not be limited to a narrow class of "favored" plaintiffs.

5. All loans were made prior to February 7, 1986, i.e. more than three years prior to February 7, 1989.

6. For example, with regard to advances during the life of the loans, decisions made or not made regarding enforcement of the Bank's legal rights with regard to the loans et cetera.

7. Here, Plaintiff is a governmental body asserting claims on behalf of a financial institution allegedly harmed by the misdeeds of those having a fiduciary duty to manage it properly.

8. Congress's only discernable intent with regard to the RTC and statute of limitations is 12 U.S.C. § 1821(d)(14). That section provides a minimum time period to bring claims—three years for tort and six years for contract claims. If the relevant state statute of limitations provides for a longer period, the state statute controls. In effect, Congress has given the Plaintiff here a three year extension of limitations by providing that any claim viable three years prior to the RTC takeover is still viable. Because Congress has addressed the subject of the RTC and statute of limitations, but did not provide any special tolling/discovery exceptions, the argument that the RTC ought to be accorded special status vis-a-vis the adverse domination doctrine is unpersuasive.

9. The happenstance that the Bank here did not have shareholders is not sufficient to justify a different version of the law pertaining to limitations.

The version of the adverse domination doctrine predicted by Judge Ramsey in the First Decision and Judge Young in *FSLIC v. Williams,* 599 F.Supp. 1184 (D.Md.1984), would provide that so long as a board of directors is controlled by a majority of alleged wrongdoers, limitations does not start to run for suits against them by, or on behalf of, the corporation. Shareholders could sue Board members for events occurring in the distant past as long as they could establish that a majority of the Board was involved in the wrongdoing. In the event of any corporate change of board control the new Board majority could sue members of the former majority for acts done in the distant past even if, presumably, members of the new majority were minority members of the Board and knew of the allegedly wrongful acts when committed.

It is apparent to this Judge that the adoption of the adverse domination doctrine in the form sought by Plaintiff would constitute a significant development in Maryland law. It is not likely, in the view of this Judge, that the Maryland Court of Appeals would so greatly open the door to the assertion of "old" claims. Hence, this Court believes that Maryland will not adopt the adverse domination doctrine espoused by Plaintiff.

### The Predicted Rule

■■■ The applicable Maryland Statute of Limitations provides that: "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md.Cts. & Jud.Proc.Code Ann. § 5–101. Maryland Courts strictly construe this statute; implied and equitable exceptions are frowned upon. *Walko Corp. v. Burger Chef Systems,* 281 Md. 207, 378 A.2d 1100, 1101–02 (1977). In *Shofer v. Hack Co.,* 970 F.2d 1316, 1320 (4th Cir.1992) the Fourth Circuit recognized that the prohibition against engrafting exceptions does not prohibit a court from construing the words of the statute, however. For example, the Maryland Court of Appeals in *Poffenberger v. Risser,* 290 Md.

631, 431 A.2d 677 (1981), had held that a claim does not "accrue"—as that term is used in the statute—until "the claimant in fact knew or reasonably should have known of the wrong." *Id.* 431 A.2d at 680.

Judge Young in *Williams* noted the interrelationship between the discovery rule and the adverse domination doctrine. 599 F.Supp. at 1195. This Judge agrees that there is a relationship and, indeed, predicts that the Maryland Court of Appeals will consider the adverse domination doctrine to be a corollary of the established discovery rule. In essence, the doctrine will be adopted, but adapted, so as to be in accord with the essence of the discovery rule. That is, that when a "triggering person" knew, or should have known, of enough to meet the discovery rule the period of limitations begins to run. The central question is who is to be considered a "triggering person" for this purpose.

This Court does not accept as consistent with the purpose of the discovery rule the idea that the "triggering person" must be a majority of the corporate board of directors. Further, this Court believes that the proper definition of a "triggering person" would be one who was in a position to take action to commence, or cause to be commenced, a law suit on the subject cause of action. That is, there must be a person whose inaction will effectively bind the plaintiff either because the person is the plaintiff or was so situated that it is appropriate to charge the plaintiff with that person's knowledge in applying the discovery rule.

As articulated in *Poffenberger,* the knowledge triggering the start of limitations was that of the claimant.[10] However, it is apparent that, in the current context, the event triggering the start of the running of limitations, i.e., the "discovery" could be made by someone other than the specific present plaintiff.

This Court believes that the Maryland Court of Appeals will deem "discovery" to have occurred when the person who had or should have had the requisite knowledge is a

---

10. The scrub room nurse's knowledge that the doctor performed the operation negligently quite obviously does not start the running of the stat- ute of limitations. It is the patient who must know (or reasonably should have known) that a wrong was done.

person who was not involved in the wrongful acts [11] so as to be a defendant and who was in a position to commence (or cause the commencement) of a law suit on the subject cause of action.

The Court, therefore, believes that the Maryland Court of Appeals will adopt, under the rubric of the established discovery rule, a version of the adverse domination doctrine equivalent to that adopted by the United States Court of Appeals for the Tenth Circuit in *Farmers & Merchants National Bank v. Bryan*, 902 F.2d 1520 (10th Cir.1990).[12] That court's reasoning was based upon the Second Circuit's decision in *International Rys. v. United Fruit Co.*, 373 F.2d 408 (2d Cir.), *cert. denied*, 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967). Judge Friendly, for the Second Circuit, had held that the adverse domination doctrine only tolls the statute of limitations if the plaintiff "effectively negate[s] the possibility that an informed stockholder or director could have induced the corporation to sue." *Id.* at 414. The burden in this situation is on the Plaintiff to demonstrate "a full, complete and exclusive control in the directors or officers charged." *Id.* (quoting *Payne v. Ostrus*, 50 F.2d 1039, 1042 (8th Cir.1931)).

Hence, this Judge predicts that consistent with the Maryland discovery rule the Maryland Court of Appeals will recognize—however it may be labelled—the form of the adverse domination doctrine described above. That is, that limitations will not begin to run as to a cause of action during a period in which there was no reasonable possibility that an informed shareholder or director could have induced the corporation to sue.

This Judge well recognizes that this predicted statement of the rule of law does not answer all of the issues that will arise in its application. For example, even Judge Friendly realized that significant questions remained for resolution, when he said

> We ... leave for another day the ... difficult question whether or under what circumstances the mere possibility of suit by an informed stockholder or director would end tolling due to "domination" of a corporation by the alleged wrongdoer. *Id.* at 415–16.

This "other day" may well arise in the instant case. However, it has not yet dawned.

This Judge rejects, as inconsistent with the jurisprudential underpinnings of the Maryland discovery rule, a rule whereby limitations do not start to run until an "innocent" majority of the corporate board have "discovered" the cause of action. The Court also rejects the Defendants' suggestion (unsupported by authority) of an "illusory control" version of the adverse domination theory under which the fact that a regulatory body (even the eventual plaintiff) had knowledge of the wrong negates the adverse domination doctrine.

### IV. MOTION RESOLUTION

■ In view of the rule of law predicted by the Court, it is apparent that there are substantial questions of fact material to deciding when limitations commenced as to Plaintiff's causes of action. *See Farmers & Merchants National Bank*, 902 F.2d at 1523. Hence, it is clear that it remains at least possible that Plaintiff could prevail on all of its claims against all Defendants.[13] Accordingly, it does not appear that any cause of action alleged in the complaint is subject to dismissal.

### V. CONCLUSION

For the foregoing reasons:

1. Defendants Woods' and Ireton's Motion to Dismiss the Complaint or for

---

**11.** To allow the tortfeasor's inaction to bind the corporation would stand logic on its head. *See Williams*, 599 F.Supp. at 1194.

**12.** This Judge does not agree with the Tenth Circuit's view that federal rather than state common law governs when causes of action accrued and whether there is equitable tolling.

**13.** Plaintiffs are certainly entitled, for now, to the very favorable position of a party resisting a motion to dismiss. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

534

Summary Judgment on the Ground that all Claims are Barred by Limitations is **DENIED.**

2.  The Motion of Defendants Mullan and Stautberg for Reconsideration of Ruling on the Statute of Limitations is **GRANTED IN PART** and **DENIED IN PART** as noted herein.

3.  Defendant Robert E. Hecht Sr.'s Motion To Dismiss The Complaint or For Summary Judgment On The Ground That All Claims Are Barred By Limitations is **DENIED.**

4.  By separate Order, the Court will certify the limitations question to the Maryland Court of Appeals.

**SO ORDERED.**