**Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, as Receiver of George Washington Life Insurance Company, Plaintiff,**

v.

**Arthur W. MILAM, et. al., Defendants.**

**Civ. A. No. 2:92–0935.**

United States District Court,
S.D. West Virginia,
Charleston Division.

June 28, 1994.

Joshua I. Barrett, Rudolph L. DiTrapano, Debra L. Hamilton, DiTrapano & Jackson, Charleston, WV, Ellen G. Robinson, C. Philip Curley, Mary Cannon Veed, Cynthia H. Hyndman, Robinson Curley & Clayton, P.C., Chicago, IL, for Hanley C. Clark, Com'r of Ins. for State of West Virginia, as Receiver of George Washington Life Ins. Co.

John E. Jenkins, Jr., John M. Poma, Suzanne McGinnis Oxley, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, for Arthur W. Milam.

John H. Wilbur, pro se.

Walter C. Walden, pro se.

Dudley D. Allen, pro se.

Frank E. Clark, Jr., pro se.

Michael J. Davoli, pro se.

Rebecca A. Betts, Robert B. King, King, Betts & Allen, Charleston, WV, Paul J. Bschorr, Alice K. Jump, White & Case, New York City, for Carolyn B. Lamm.

Michael Bonasso, Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Betty Cordial.

John H. Tinney, John J. Nesius, Miller A. Bushong, III, Spilman, Thomas, Battle & Klostermeyer, Charleston, WV, David Alden, Cleveland, OH, for Tom Fennell, Ernst & Young.

Michael Bonasso, Flaherty, Sensabaugh, & Bonasso, Charleston, WV, for John Pendlebury.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the motions for summary judgment filed by Defendants Lamm, Milam, Allen, Clark, Davoli, Wilbur, Withers and Thompson. Plaintiff has responded.[1] This litigation has spawned an enormous paper trial, including six published memorandum opinions.[2] The action initially was filed in the Circuit Court of Kanawha County, West Virginia, but was then removed to this Court. The Plaintiff, Hanley C. Clark, Commissioner of Insurance for the State of West Virginia, is the appointed Receiver of the George Washington Life Insurance Company ("GW LIFE"). He has alleged the Defendants were part of a wide-ranging conspiracy to loot the assets of GW LIFE. The Defendants include the former officers and directors, a former lawyer and two former accountants of GW LIFE.[3] Several other Defendants were dismissed from this action previously.

Each Defendant asserts no questions of material fact exist and they are entitled to judgment as a matter of law. The standard used to determine whether a motion for summary judgment should be granted or denied was stated recently by our Court of Appeals:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, [106 S.Ct. at 2513]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* [498 U.S. 1109] 111 S.Ct. 1018, [112 L.Ed.2d 1100] (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, [106 S.Ct. at 2510]. A mere scintilla of evidence supporting the case is insufficient. *Id."* *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *petition for cert. filed,* 62 USLW 3827 (1994).

*Accord Cornell v. General Electric Plastics,* 853 F.Supp. 221, 225–26 (S.D.W.Va.1994) (Haden, C.J.); *Thomas v. Shoney's Inc.,* 845

---

1. Separate motions were filed on behalf of (1) Lamm, (2) Milam, (3) Allen, Clark, Davoli and Wilbur, and (4) Withers and Thompson. Plaintiff has filed three separate responses, responding to Milam, Allen, Clark, Davoli and Wilbur in a single response brief. Defendants have filed replies to the responses and Plaintiff has filed a surreply. All filings have been considered.

2. *See Clark v. Milam (Clark VI),* 155 F.R.D. 546 (S.D.W.Va.1994); *Clark v. Milam (Clark V),* 847

F.Supp. 424 (S.D.W.Va.1994); *Clark v. Milam (Clark IV),* 847 F.Supp. 409 (S.D.W.Va.1994); *Clark v. Milam (Clark III),* 152 F.R.D. 66 (S.D.W.Va.1993); *Clark v. Milam (Clark II),* 830 F.Supp. 316 (S.D.W.Va.1993); *Clark v. Milam (Clark I),* 813 F.Supp. 431 (S.D.W.Va.1993).

3. The officer and director Defendants are Milam, Wilbur, Walden, Allen, Clark, and Davoli; the lawyer is defendant Lamm; and the accountants are Withers and Thompson.

F.Supp. 388, 389–90 (S.D.W.Va.1994) (Haden C.J.).

Although they have filed several separate briefs, the Defendants rely on similar grounds to support their motions for summary judgment. These grounds include the following: (1) the applicable statute of limitations bar Plaintiff's claims; and (2) Plaintiff's claims are barred under the doctrine of *res judicata.*

## I.

## STATUTE OF LIMITATIONS

### A.

## ADVERSE DOMINATION

Defendants argue the statute of limitations has run on the claims against them, and therefore Plaintiff's action is barred. The applicable limitations period is two years. W.Va.Code § 55–2–12 (1959).[4] Plaintiff does not dispute that over two years elapsed between Defendants' alleged wrongdoing toward GW LIFE and the filing of this lawsuit. Plaintiff instead argues the statute of limitations was tolled until his appointment as Receiver. If the limitations period was tolled, it is undisputed Plaintiff's action was filed timely.

■ Plaintiff argues the limitations period was tolled under the doctrine of adverse domination. Adverse domination occurs when the officers and directors who control the rights of the corporation act adversely to the corporation's interests, usually for personal gain, to the detriment of the corpora-

tion and/or its non-officer/director shareholders. As previously noted in *Clark IV,* 847 F.Supp. 409, 421 (S.D.W.Va.1994), our Court of Appeals has described the doctrine of adverse domination as follows:

"Under the doctrine of adverse domination, a statute of limitations is tolled on an action against director/officer misconduct so long as a majority of the board is controlled by the alleged wrongdoers. The doctrine rests on the theory that if the wrongdoers 'controlled the corporation through a majority of stock ownership and control of the directorate[,] there [would] consequently [be] no one to sue them.' *White v. FDIC,* 122 F.2d 770, 775 (4th Cir.1941), *cert. denied,* 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942)." *F.D.I.C. v. Cocke,* 7 F.3d 396, 402 (4th Cir.1993),[5] *petition for cert. filed,* 62 USLW 3659 (1994).

*See also, In re Lloyd Securities, Inc.,* 153 B.R. 677, 684 (E.D.Pa.1993), *citing Resolution Trust Co. v. Gardner,* 798 F.Supp. 790, 795 (D.D.C.1992) (" 'Under the doctrine [of adverse domination], a cause of action will be tolled during the period that a plaintiff corporation is controlled by wrongdoers. Tolling is considered appropriate because where the culpable directors and officers control a corporation, they are unlikely to initiate actions or investigations for fear that such actions will reveal their own wrongdoing.' ").

■ Although West Virginia has not had occasion to address the viability of the doctrine of adverse domination, this Court con-

---

**4.** W.Va.Code § 55–2–12 states, in pertinent part: "Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property[.]" This limitation period applies to actions for professional malpractice. *See Hall v. Nichols,* 184 W.Va. 466, 400 S.E.2d 901 (1990).

**5.** Significantly, the Court did not apply the doctrine of adverse domination in *Cocke.* It concluded *Virginia* had not adopted the doctrine but had instead utilized an equitable estoppel application in similar cases. *See also White v. Federal Dep. Ins. Co.,* 122 F.2d 770, 774–75 (4th Cir. 1941), *cert. denied,* 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942) (construing Virginia law, the Court of Appeals stated, "knowledge of *all*

the stockholders is knowledge of the bank and ... where these and the banking authorities have such knowledge and have power under the law to institute suit or take other action to remedy the situation, the statute of limitations is set in motion. In other words, there is not reason why the running of the statute with respect to a diversion of assets should be suspended when *all* parties affected thereby have knowledge thereof and full power under the law to pursue a remedy." (emphasis added)); *Resolution Trust Corp. v. Everhart,* 837 F.Supp. 155, 158 (E.D.Va.1993). In this case *West Virginia* law applies. Defendants' various references to cases construing *Virginia* law, although instructive, are not controlling. *See* note 6, *infra; Resolution Trust Corp. v. Hecht,* 818 F.Supp. 894, 899, n. 11 (D.Md.1992).

cluded the State courts would adopt the doctrine:[6] "It seems clear on the basis of West Virginia law and cases that West Virginia courts would toll the statutes of limitation until the Plaintiff's appointment as Receiver on a basis substantially similar to application of the doctrine of adverse domination."[7] *Clark IV, supra,* 847 F.Supp. at 423.[8] In *Clark IV* this Court discussed the rationale behind the foregoing conclusion, stating:

> "the adoption of [the] doctrine [of adverse domination] would comport with [West Virginia's] discovery rule applied in fraud cases and outlined in Syllabus Point 2 of *Cecil v. Airco, Inc.,* 187 W.Va. 190, 416 S.E.2d 728 (1992):
>
> > 2. 'Where a cause of action is based *on tort or on a claim of fraud,* the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable due diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury.' Syl. pt. 3, *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990).

*See also, Hundley v. Martinez,* 151 W.Va. 977, 158 S.E.2d 159 (1967); *Baker v. Hendrix,* 126 W.Va. 37, 27 S.E.2d 275 (1943); *Plant v. Humphries,* 66 W.Va. 88, 66 S.E. 94 (1909). By extension, a Receiver of a corporation who is appointed after a period of adverse domination of that corporation should not be held to a strict application of the statute of limitations by a defendant whose fraud contributed to the period of adverse domination. Such a policy would allow the defendant to hide behind his fraud—precisely the state of affairs the discovery rule is designed to prevent."[9] (emphasis added).

Defendant Lamm makes much of the fact that the particular Defendants in *Clark IV* were accused of fraud, and suggests the doctrine of adverse domination may be utilized only against a defendant who has concealed intentional tortious conduct fraudulently.

The basis for this Court's ruling in *Clark IV* was clearly the similarity between the doctrine of adverse domination and West Virginia's discovery rule.[10] As stated in *Sylla-*

---

**6.** The Court is mindful of the recent admonition of the United States Supreme Court of Appeals that federal courts must do their best to apply *state,* and not federal, rules of decision, to causes of action created under state law. *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Even where issues have been raised, "that may not have been definitively settled in the state jurisdiction in which the case is brought[,] ... federal judges must do their best to estimate how the relevant state courts would perform their law-making task, and then emulate that sometimes purely hypothetical model." —— U.S. at ——, 114 S.Ct. at 2056, 129 L.Ed.2d at 77, (Stevens, J., concurring). This action encompasses both federal and state causes of action; it is clear, however, that state law policy considerations predominate, *see, e.g.* Note 10, *infra,* and the Court has done its best to apply state law rules of decision.

**7.** Although not cited in *Clark IV, supra,* the Supreme Court of Appeals of West Virginia has addressed a similar issue and reached a conclusion consistent with the result in *Clark IV.* In *Felsenheld v. Bloch Bros. Tobacco Company,* 119 W.Va. 167, 192 S.E. 545, (1937) the Court tolled the statute of limitations in a shareholder derivative action where the shareholder claimed to have no knowledge of officer/director misconduct until several months before the action was filed. *See also,* Annotation, *Statute of limitations*

*in stockholder's derivative suit against directors or officers,* 123 A.L.R. 346 (1939).

**8.** *Compare Resolution Trust Corp. v. Hecht,* 833 F.Supp. 529 (D.Md.1993) (construing and predicting Maryland law concerning the doctrine of adverse domination based upon the Maryland discovery rule); *Resolution Trust Corp. v. Hecht,* 818 F.Supp. 894 (D.Md.1992).

**9.** In footnote 30 of *Clark IV, supra,* 847 F.Supp. at 423, this Court stated, in part:

> "Adoption of the adverse domination doctrine in West Virginia would also comport with banking receivership actions from other jurisdictions where the adverse domination of the bank was held to toll the applicable limitation period until the appointment of the receiver. *See e.g., Resolution Trust Corp. v. Scaletty,* 810 F.Supp. 1505 (D.Kan.1992); *F.D.I.C. v. Nathan,* 804 F.Supp. 888 (S.D.Tex.1992); *Resolution Trust Corp. v. Gardner,* 798 F.Supp. 790 (D.D.C.1992); *Banco De Desarrollo Agropecuario, S.A. v. Gibbs,* 709 F.Supp. 1302 (S.D.N.Y. 1989); *Federal Deposit Ins. Corp. v. Buttram,* 590 F.Supp. 251 (N.D.Ala.1984). In such cases, the receiver is not treated as a normal successor in interest."

**10.** "[T]he adverse domination theory is a mere extension of the discovery rule." *In re Lloyd Securities, Inc., supra,* 153 B.R. at 684.

*bus* Point 1 of *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992): "Generally a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the 'discovery rule,' *the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim.*" (emphasis added). The discovery rule applies not only in cases of fraud, but in all tort actions. *Syllabus* Point 2, *Cart v. Marcum, supra,* ("The 'discovery rule' is generally applicable to all torts, unless there is a clear prohibition of its application."); *Syllabus* Point 3, *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990). Although fraudulent concealment is not necessary to activate the discovery rule, "some action" by the defendant to prevent discovery of the tort is required. *Syllabus* Point 3, *Cart v. Marcum, supra* ("Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.").[11]

In *Clark IV, supra,* the Plaintiff's allegations of fraud against the accountant Defendants clearly met the discovery rule standard when combined with the principles underlying the doctrine of adverse domination. 847 F.Supp. at 423. Nonetheless, the doctrine of adverse domination is not *identical* to the discovery rule. When a corporation is under the exclusive control of its officers and directors, and those officers and directors use their control adversely to the interests of the corporation, action to preserve the corporation's interests against those officers and directors is limited. Consequently, a plaintiff receiver of a formerly adversely held corporation is permitted equitable tolling of statute of limitations for actions against those who created or contributed to the adverse domination.

In terms of the discovery rule, the doctrine of adverse domination deems a receiver to discover the corporation's cause of action upon his appointment. This is so because the receiver, even if he has or should have discovered previously the wrongdoing in his non-receiver capacity, has no right to pursue the cause of action on behalf of the corporation until he moves to the capacity of receiver, thereby assuming the received corporation's rights.

In West Virginia, concepts of fraudulent concealment or intentional torts are instructive but not controlling because, "the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the

The Court also acknowledges there are very strong policy arguments in favor of acceptance of the doctrine of adverse domination in West Virginia when the West Virginia Insurance Commissioner is appointed receiver of an insurer. *W.Va. Code,* 33–27–10 (1974) outlines the conditions whereby the Insurance Commissioner may take an insurer into receivership, stating:

"Whenever it appears to the commissioner that any person has committed a violation of this article which so impairs the financial condition of a domestic insurer as to threaten insolvency or to make further transaction of business by it hazardous to its policyholders, creditors, shareholders or the public, then the commissioner may take possession of the property of such domestic insurer and proceed as provided in article ten [§ 33–10–1 et. seq.] of this chapter."

The foregoing statute clearly articulates the policy underpinnings for appointment of the Insurance Commissioner as receiver for an insurer. The appointment is not *solely* for the benefit of the corporation, but is for the more general benefit of "policyholders, creditors, shareholders *or the public*[.]" (emphasis added). Rather than being deemed to solely represent the interests of the corporation, the Insurance Commissioner *as Receiver* represents a broad array of interests, including those of the public. Thus, there are public policy reasons to distinguish the Insurance Commissioner Receiver from self-interested minority shareholders.

11. *Cf. Syllabus* Point 3, in part, *Sattler v. Bailey,* 184 W.Va. 212, 400 S.E.2d 220 (1990) ("The general statute of limitations, *W.Va.Code,* 55–2–12, as amended, is tolled, with respect to an undiscovered wrongdoer, by virtue of fraudulent concealment or obstruction of prosecution doctrine embodied in *W.Va.Code,* 55–2–17, as amended, when an action is brought timely against the known wrongdoer(s) and, despite the due diligence of the injured person to discover the identity of all of the wrongdoers, the identity of one or more than one of them is hidden by words or acts constituting affirmative concealment, that is, a 'cover-up.' ").

injury." *Syllabus* Point 2, in part, *Cart v. Marcum, supra; Syllabus* Point 2, *Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312 (1980) ("In malpractice, our discovery rule does not initially rest on a showing of fraudulent concealment, but rather on whether the injured plaintiff was aware of the malpractice or, by the exercise of reasonable care, should have discovered it."); *see also, Cart v. Marcum,* 188 W.Va. at 244, n. 6, 423 S.E.2d at 647, n. 6. What is important, then, is whether the plaintiff has made a strong showing that the defendant's wrongdoing constitutes "some action" contributing to the adverse domination. *Compare Syllabus* Point 2, *Cart v. Marcum, supra.* The Court thus concludes under West Virginia law, the doctrine of adverse domination would toll the statute of limitations until the appointment of a receiver only where the plaintiff makes a strong showing that the defendant's alleged wrongdoing constitutes "some action" contributing to the adverse domination.

■ It is clear the allegations against the officer/director Defendants, if proved, would constitute "some action" contributing to the adverse domination of GW LIFE, thus tolling the statute of limitations until the Plaintiff's appointment as Receiver. The officers and directors were primarily responsible for the alleged wrongdoing through their adverse control of GW LIFE. Moreover, the Plaintiff alleges Defendant Lamm failed to recognize she had a conflict of interest while representing GW LIFE: Plaintiff asserts Lamm represented other clients, including the individual officers and directors of GW LIFE, and GW LIFE's parent corporation, GW CORP, all of whom had interests adverse to GW LIFE, thus contributing to the adverse domination of GW LIFE. Although Lamm objects to this characterization of the facts, it is clear that, if proved, such conduct would amount to "some action" contributing to the adverse domination of GW LIFE, thus tolling the statute of limitations until the appointment of the Receiver. Plainly, this demonstrates a triable issue of material fact precluding summary judgment.[12]

Plaintiff was appointed Receiver of GW LIFE on June 3, 1991 and the two year statute of limitations was tolled until that date. Because the complaint against the Defendants was filed on September 2, 1992, the case was brought within two years from the date the cause of action accrued to Plaintiff.

## B.

### SHAREHOLDER DERIVATIVE SUITS

■ The application of the doctrine of adverse domination acquires an added element of complexity when one considers the ability and interest of shareholders in an adversely dominated corporation to oppose wrongdoing through shareholder derivative actions. If the doctrine of adverse domination operates to toll a statute of limitations because it is similar to the discovery rule, it naturally follows that the doctrine should not apply where there is someone knowledgeable of the wrongdoing who is both capable and willing to redress the wrongs.

It is well-established that shareholders bringing a derivative suit do so *on behalf of the corporation.*[13] It stands to reason, when shareholders file a derivative action, their knowledge of wrongdoing should be imputed to the corporation. For statute of limitations purposes, the shareholders' knowledge of

---

12. The Court previously addressed these issues in regard to Defendants Withers and Thompson in *Clark IV, supra.* Those issues were adequately addressed there and need not be discussed further.

13. As stated in 1 Roger J. Magnuson, *Shareholder Litigation* § 8.01 (1993):
    "The corporation as a person, albeit a fictitious one, has a life and interests distinct from those of its temporary managers. Those who control it must do so with good faith and exercise good stewardship. If they do not, a minority shareholder may come to the corporation's defense as a representative of its true interests. The shareholder himself is only a nominal plaintiff deriving his authority to bring the action from the real party in interest, the corporation itself. It is not a class action, in which the plaintiff aggregates direct claims of other plaintiffs against the corporate entity, but an action brought in behalf of the corporation itself." (footnotes omitted).
    See W.Va.Code § 31–1–103; *Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 655, 57 S.E.2d 736, 746 (1950) ("[A] stockholder of a corporation may maintain a derivative suit for the benefit of the corporation[.]").

wrongdoing constitutes discovery *by the corporation* of that same wrongdoing. In *Federal Deposit Insurance Corporation v. Paul,* 735 F.Supp. 375, 377 (D.Utah 1990) the court, construing Utah law, stated: "The pith of adverse domination is that shareholders have no realistic opportunity to bring suit against the directors because the directors' control ... could result in concealment or nondisclosure of the grounds of the cause of action." Therefore, the corporation's cause of action accrues when the shareholders discover the actionable wrongdoing despite any adverse domination of the corporation by officers and directors.

The foregoing proposition finds support in all cases addressing the issue. The leading case in this area is *International Railways of Central America v. United Fruit Company,* 373 F.2d 408 (2nd Cir.), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967) where the Second Circuit stated: "This principle [of adverse domination] must mean at least that once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue." *Compare Resolution Trust Corporation v. Hecht,* 833 F.2d 529, 533 (D.Md.1993) (construing Maryland law, the Court held, "that limitations will not begin to run as to a cause of action during a period in which there was no reasonable possibility that an informed shareholder or director could have induced the corporation to sue.").[14]

The foregoing principle was qualified by the Court of Appeals for the Tenth Circuit in *Farmers & Merchants National Bank v. Bryan,* 902 F.2d 1520, 1523 (10th Cir.1990), where the court stated:

"... a plaintiff may also demonstrate adverse domination by proving that an informed director [or shareholder], though capable of suing, *would not do so....* the issue is whether there was evidence, when viewed in a light most favorable to plaintiffs, upon which a reasonable jury could find both (1) that the ... outside directors [or shareholders] knew or should have

known the facts giving rise to possible liability and (2) that [the directors or shareholders] could or would have induced the corporation to sue." (emphasis added).

*See also Clark IV, supra,* 847 F.Supp. at 422, *citing Hunt v. American Bank & Trust Co. of Baton Rouge, Louisiana,* 606 F.Supp. 1348, 1354–56 (N.D.Ala.1985), *aff'd* 783 F.2d 1011 (11th Cir.1986) ("the statute of limitations may begin to run when it is clear that the shareholders of the corporation, *with an interest in redressing the wrongs against their corporation,* are, or should be aware of the fraudulent activities damaging the corporation." (emphasis added)).[15] The reason for this qualification of the doctrine of adverse domination is apparent. Unlike the application of the discovery rule to a normal Plaintiff, who clearly must be responsible for his own actions, when applied to the adversely dominated corporation, the rule must take into consideration shareholders are merely *acting* as the corporation pursuant to a legal fiction, and may have very limited interests or goals. *See, e.g.,* Notes 16 and 17, *infra.* If the shareholders have no interest in redressing the wrongs, there will be no one to protect or advance the corporate causes of action. This consideration is especially significant where the Receiver is a governmental official charged with authority to protect *not only* the shareholders of the corporation, but also policyholders, creditors and the public. *See* Note 10, *supra.*

■ Turning to the instant case, the Defendants claim the doctrine of adverse domination is inapplicable because the shareholders of GW CORP, GW LIFE's parent company, (1) were or should have been aware of the alleged wrongdoing, and (2) acted upon that alleged wrongdoing by filing and settling shareholder derivative suits on the same issues presented by the Plaintiff herein. Conversely, the Plaintiff argues there is a question of fact whether the shareholders sought to benefit GW LIFE in their derivative actions—or, put in terms of *Farmers & Merchants National Bank v. Bryan, supra,* or *Hunt v. American Bank & Trust Co. of*

---

**14.** *See also Hecht v. Resolution Trust Corp.,* 333 Md. 324, 635 A.2d 394 (1994).

**15.** *But cf., Armstrong v. McAlpin,* 699 F.2d 79, 87 (2nd Cir.1983).

*Baton Rouge, Louisiana, supra,* there is a question of fact whether the shareholders, although capable of suing the officer/director Defendants to benefit GW LIFE, did or even would attempt to so sue. Plaintiff contends the evidence, when viewed most favorably for him, shows that the shareholders of GW CORP had no interest in redressing the wrongs against *GW LIFE,* and wished to benefit *GW CORP* (and themselves [16]) only: that they filed their derivative actions not for the benefit, but actually at the expense, of GW LIFE.[17]

The Court concludes this is not a matter for summary judgment. The Defendants seek to show the shareholder derivative actions were filed by shareholders who had an interest in redressing wrongs to GW LIFE. They contend shareholders of GW CORP had an interest in preventing the insolvency of GW LIFE because, in the end, they would become responsible for GW LIFE's losses. The Plaintiff argues GW CORP's shareholders had much more limited objectives, and merely sought to either shore up *GW CORP's* finances or benefit themselves.[18] The implication is the shareholders sought to do so *at the expense of GW LIFE.* The Court declines to resolve this factual question. *Shaw v. Stroud, supra,* 13 F.3d at 798.

Whether or not GW CORP's shareholder's (1) knew or should have known of the Defendants' wrongdoing, (2) had an interest in redressing any wrongdoing, and (3) could or would attempt to redress any of the alleged wrongdoing all remain as questions of fact. Those facts most favorable to the non-moving party, the Plaintiff, must be presumed to be true for the purposes of the motions for summary judgment. *Shaw v. Stroud, supra.* Because the evidence is in dispute whether GW CORP's shareholders had any interest in redressing the wrongs to GW LIFE, and if they had such an interest, whether the shareholders could or would attempt to redress the wrongs to GW LIFE, the Defendants' motions for summary judgment on the statute of limitations issues are **DENIED.**

## II.

## RES JUDICATA

■ Defendants argue Plaintiff's claims are barred by the doctrine of *res judicata.* In *Nash County Board of Education v. Biltmore Company,* 640 F.2d 484, 486 (4th Cir.) *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981) our Court of Appeals enunciated the three elements that must coexist before *res judicata* may bar a subsequent action:

---

**16.** Bolstering Plaintiff's argument is the fact that the minority shareholders accepted a settlement of the Florida litigation in which their shares of GW CORP stock were bought out and their attorney fees paid in return for a dismissal of the action. Defendant Lamm's Motion for Summary Judgment, Appendix, Exhibit 3 at 7. In its settlement Order, the Court also expressed reservations whether the shareholders had standing to bring the derivative action on behalf of GW CORP. *Id.* at 14.

**17.** Plaintiff states the following:
"Here, the O & D Defendants' scheme was to transfer assets out of GW Life for the benefit of GW Corp; the bulk of the wrongfully transferred assets remained within the ownership and control of GW Corp and its shareholders. Thus, GW Corp was *not* damaged by the transfers of GW Life's assets." Plaintiff's Memorandum in Opposition to Defendant Carolyn Lamm's Motion for Summary Judgment, at 22. Plaintiff argues GW LIFE's interests were fundamentally adverse to those of GW CORP's shareholders:
"There is a fundamental conflict between the interests of a parent company and its insurance company subsidiary. The insurance com-

pany must at all times be cautious that it has adequate reserves available to pay its obligations to meet its policyholders legitimate claims. Obviously, the interests of the shareholders of the parent company are different. The shareholders' interest is in the return on their investment. The greater the amount of money available to the parent holding company, the larger the amount of dividend available to pay to shareholders." Plaintiff's Memorandum in Opposition to Defendant Carolyn Lamm's Motion for Summary Judgment, at 38.

**18.** In the dismissal order granting settlement in the Florida action, the Court described the actions of the minority shareholders as follows: "... all plaintiffs ... ha[ve] been involved, to one degree or another, in previous litigation with GW [CORP], participated in efforts to take over the Company, associated with others involved in such actions, or participated in actions that were, in GW [CORP]'s view, inconsistent with the interests of GW [CORP]." Defendant Lamm's Motion for Summary Judgment, Appendix, Exhibit 3 at 16.

"As applied, the essential elements of the doctrine [of *res judicata*] are generally stated to be (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits."

*See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991); *Keith v. Aldridge*, 900 F.2d 736 (4th Cir.), *cert. denied sub nom.*, *Keith v. Rice*, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990); *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *Banner Industries of New York v. Sansom*, 830 F.Supp. 325, 328 n. 4 (S.D.W.Va.1993) (Haden, C.J.).

To support the *res judicata* bar, Defendants point to several lawsuits brought by the shareholders of GW CORP against the officer/director Defendants in the mid–1980's. They contend the shareholder suits were derivative actions brought on behalf of GW LIFE's parent corporation, GW CORP. Defendants assert the shareholders represented both the interests of GW CORP and GW LIFE; and that the derivative actions were based upon the same transactions complained of by the Plaintiff in the instant case.

This much is clear. Minority shareholders of GW CORP filed their derivative action in the federal district court for the Middle District of Florida in 1988. The officer/director Defendants herein were named defendants, along with others, in the derivative action. GW CORP, GW LIFE and the officer/director Defendants then filed a countersuit against the minority shareholders that was consolidated with the derivative action for joint hearings and trial. The consolidated action was thereafter settled, and the court issued a settlement order dismissing the action *with prejudice*.

■ The settlement of a shareholder derivative suit and a consequential dismissal of the action with prejudice is a final judgment on the merits of the claims alleged therein. *Harnett v. Billman, supra*, 800 F.2d at 1311–12; *Restatement of Judgments 2d* § 59 *comment c.* (1982) ("The corporation is the beneficiary of the judgment if the derivative action is successfully maintained and is bound

by the judgment if judgment is in favor of the person against whom the claim is asserted."). Because the derivative actions in the instant case were settled before trial, it is undisputed that those settlements constitute "a final judgment on the merits in an earlier suit[.]" *Nash County Bd. of Ed., supra*, 640 F.2d at 486. Plaintiff contests, however, whether: (1) there is an identity of parties with the prior derivative action such that the parties herein are bound by the prior judgment; and (2) there is an identity of the causes of action with the derivative suit.

■ It is clear GW LIFE was a party to the consolidated action. The cause of action asserted by GW LIFE (along with GW CORP and the officer/director Defendants) in the consolidated action was, however, wholly dissimilar to the causes of action now advanced. In the Florida case GW LIFE sought to prevent certain disclosures made by the minority shareholders. The minority shareholders, not GW LIFE, asserted the causes of action alleged to be similar to those asserted by the Plaintiff in the instant case. Clearly, there is no identity between the cause of action asserted by GW LIFE in the consolidated action and those now asserted by the Plaintiff.

Assuming the minority shareholders' causes of action arose from the same transactions as the causes of action now asserted by the Plaintiff, the only way identity of cause of action may be established is to determine GW LIFE was in privity with the minority shareholders. Such a finding would stretch the bounds of logic; it is difficult for this Judge to divine how a party suing another could be in privity with the party sued. Moreover, there are serious unresolved questions of fact concerning the minority shareholders standing to bring the derivative action. *See* Note 16, *supra*. If the minority shareholders did not have standing to bring the derivative action, they can not be considered to be representative of either GW CORP or GW LIFE, and privity between the parties would not exist.

Because there is no identity of the cause of action asserted by GW LIFE in the prior litigation with those now asserted by GW

LIFE through the Receiver, and because GW LIFE was not in privity with the minority shareholders in the prior litigation, Plaintiff's claims are not barred by a former adjudication. Defendants' motions based on *res judicata* grounds are therefore **DENIED**.

## III.

### OTHER GROUNDS

Defendants Milam and Lamm assert they have been released from liability through releases signed in connection with the derivative action. Defendant Milam also asserts Plaintiff has failed to plead adequately causation linking the RICO allegations against him and the losses to GW LIFE. The Court finds those assertions meritless and **DENIES** summary judgment on those grounds.

## IV.

### MOTION FOR PARTIAL RECONSIDERATION

Defendants Withers and Thompson also moved for partial reconsideration of this Court's holding in *Clark IV, supra,* on the basis of *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* — U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Withers and Thompson assert the Supreme Court's *Central Bank* analysis of aiding and abetting liability in a securities law context applies with equal force to aiding and abetting liability under the Racketeer Influenced and Corrupt Organizations Act (RICO). Irrespective of the merit of the argument, the fact remains this Court concluded in *Clark IV:* "the use of the term 'aiding and abetting' is not helpful [in terms of a RICO violation] because it is the quantity and quality of the defendant's participation in the RICO enterprise that must be evaluated. Such an evaluation can only be made on a case by case basis." *Clark IV,* 847 F.Supp. at 417. This Court held then and now reaffirms: "the Plaintiff's claim alleges that the Defendants exercised sufficient control over the conduct of the RICO enterprise to withstand a motion to dismiss[.]"

---

19. Plaintiff's motion for leave to file a surreply is **GRANTED**. Lamm's motion to file a surreply to the surreply is likewise **GRANTED**. Milam's

*Id.* at 417. The *Central Bank* decision is inapposite because Withers and Thompson's alleged conduct meets the definition of RICO participation; Defendants' motion is therefore **DENIED**.

## V.

### CONCLUSION

Based upon the foregoing, all Defendants' motions for summary judgment are **DENIED**.[19]

motion to assert newly-decided authority is **GRANTED**. All authorities were considered.